MOCHAR SALES COMPANY, by D. R. Murphy, Douglas W. Knox, J. K. Haroway, P. B. Sterling, E. K. Ogier, Cecil S. Knox, and Maurice P. Dore, as its statutory Trustees under Nevada law, Plaintiff-Appellant,

v.

Robert M. MEYER, Jr., d/b/a Pleitner Charcoal and Brokerage Company, Defendant-Respondent.

No. 49618.

Supreme Court of Missouri,

Division No. 2.

Dec. 9, 1963.

Rehearing Denied Jan. 13, 1964.

Pollock, Ward, Klobasa & Shaw, T. Hartley Pollock, John A. Shaw, William E. Buckley, St. Louis, for appellant.

Schurr & Inman, Clayton, for respondent.

STORCKMAN, Presiding Judge.

The plaintiff obtained a verdict and judgment for $28,875 including interest in its suit on an account for charcoal sold and delivered at the special instance and request of the defendant. The trial court sustained the defendant's motion for a new trial on six grounds. Three relate to the conduct of the trial and three to the giving of instructions to the jury. The plaintiff has appealed from the order and judgment granting the defendant a new trial.

Plaintiff's amended petition on which the case was tried alleged in substance that Mochar Sales Company, a Nevada corporation, was licensed in the State of Missouri and engaged in the business of selling charcoal with its principal office in Jefferson City; that subsequent to December 31, 1959, Mochar Sales Company withdrew from the State of Missouri, and on October 12, 1960, was voluntarily dissolved as a corporation; that under the laws of Nevada the seven persons named in the petition as trustees, being the last board of directors of Mochar Sales Company, were duly authorized to prosecute the suit in the name of the former corporation; that the defendant, doing business as Pleitner Charcoal and Brokerage Company, was engaged in the business of buying, selling, brokering and distributing charcoal and related products; that during the period from March 1, 1959, to July 18, 1959, Mochar sold and delivered to the defendant Minit-Glo brand briquets and Ozark brand briquets of the reasonable value of $28,-203.58 in accordance with the statement attached as an exhibit to the petition; and that the balance due on the account was $28,035.59 for which judgment was prayed with interest.

In his amended answer, the defendant admitted that he purchased Ozark brand briquets as alleged in plaintiff's amended petition and that they were a standard form of briquets used for barbequing; however, the defendant denied that "he purchased the quantities of Minit-Glo Briquets, as per invoice number and date of shipment and for the amounts set opposite thereof in 'Exhibit A' attached to plaintiff's petition". The amended answer further alleged that prior to May 23, 1959, Mochar Company decided to promote the sale in the St. Louis area of a new type of briquet called Minit-Glo which was represented to have certain advantages and qualities not present in the standard form of briquet; that in order to promote Minit-

Glo in the St. Louis area Mochar Company agreed with the defendant that "if this defendant would handle and distribute said Minit-Glo Briquets in the St. Louis area on a guaranteed sales basis, that is, a basis whereby this defendant would only be liable for the payment of such Minit-Glo Briquets that were actually sold to the public or not returned by the retail outlets to this defendant," the plaintiff would do certain advertising and otherwise cooperate with the defendant in the promotion and sale of Minit-Glo briquets; that Mochar breached its agreement with the result that the defendant was able to sell only approximately $2,000 worth of Minit-Glo and he was damaged in the sum of $10,861.95 which he prayed as a setoff against the plaintiff's claim; the defendant waived any damage he might have suffered in excess of the plaintiff's claim.

Since there is no issue presented as to the sufficiency of the evidence, it will be sufficient for present purposes to state that there was evidence tending to support the claims of the parties as shown by their respective pleadings. The defendant admitted that he owed $7,440 for Ozark brand briquets purchased from Mochar and about $2,000 for Minit-Glo briquets which he had been able to sell, but claimed as an offset $10,861.95 alleged to be the amount due him by virtue of Mochar's breach of contract relating to the distribution and sale of Minit-Glo briquets. The plaintiff struck several items from its claim and reduced the prayer of its petition to $27,-853.58.

■ The defendant did not file a brief in this court from which it follows that he did not argue the appeal orally. A respondent is not required to brief his case on appeal and may rely upon the presumption of a right judgment in the trial court. Lakin v. Postal Life and Casualty Ins. Co., Mo., 316 S.W.2d 542, 549[3]; Marks v. Acme Phonograph Co., Mo.App., 253 S.W. 174, 175[3]. Nevertheless, it has been the policy of this court to encourage briefs and oral argument by both parties. When a party fails to do so, he misses an opportunity to aid the court in arriving at a proper decision. Quinn v. St. Louis Public Service Co., Mo., 318 S.W.2d 316, 319[1, 2]. See also Fidelity Loan Securities Co. v. Moore, 280 Mo. 315, 217 S.W. 286, 288[3].

Plaintiff's verdict-directing instruction No. 1 follows in general the language and theory of plaintiff's petition. Instruction 2 given at the defendant's request told the jury that the defendant admitted an indebtedness of $9,440 for Ozark and Minit-Glo briquets which the defendant had not paid because he claimed that the plaintiff was indebted to him in excess of that amount "by virtue of breach of contract relating to the distribution and sale of Minit-Glo briquets", and if the jury found that the defendant agreed to handle Minit-Glo on a guaranteed sales basis it should not find against the defendant for the Minit-Glo briquets remaining unsold and, if they further found that the plaintiff had breached the obligations it had undertaken with respect to furnishing and marketing Minit-Glo and the defendant was damaged, it should setoff the amount of such damage against the amount due the plaintiff for Ozark and Minit-Glo brand briquets sold.

Two grounds of error specified by the trial court in granting the new trial relate to instructions 3 and 4 given on behalf of the plaintiff. Both are burden of proof instructions. They are as follows:

3. "As to the allegation by defendant Robert M. Meyer, Jr., that Mochar Sales Company agreed to guarantee sales by said defendant of certain 'Minit-Glo' brand charcoal mentioned in evidence, as submitted to you in Instruction No. 2, the Court instructs you that the burden rests upon defendant Robert M. Meyer, Jr., to prove by the greater weight of the credible evidence that Mochar Sales Company made such an agreement with said defendant. Therefore, if the weight of credible evi-

dence on this issue preponderates in favor of plaintiffs, or is evenly balanced, then in that event defendant Robert M. Meyer, Jr., has not met and carried the burden of proof required of him as to such issue under the law and under the instructions in this case."

4. "The Court instructs the jury that the burden rests upon defendant Robert M. Meyer, Jr. to prove by the greater weight of the credible evidence that he entered into an agreement with Mochar Sales Company on a guaranteed sale basis as submitted to you in Instruction No. 2; and that Mochar Sales Company breached such agreement, if any; and that as a result thereof defendant Robert M. Meyer, Jr., incurred damages by reason of certain alleged expense items mentioned in evidence; and that such alleged expense items were actually incurred by defendant Robert M. Meyer, Jr.; and that said alleged expense items were reasonable in amount. Therefore, as to any such alleged expense item or items, if the weight of the credible evidence on any one of the above issues preponderates in favor of plaintiffs, or is evenly balanced, then your verdict as to such alleged expense item or items must be in favor of plaintiffs and against defendant Robert M. Meyer, Jr."

The defendant alleges in his motion for new trial that instructions 3 and 4 erroneously relieve the plaintiff of its burden of proving its contention that the transaction was an outright sale by imposing on the defendant the burden of proving his defense of a guaranteed sales agreement; that instructions 3 and 4 constitute two burden of proof instructions on the same issue and are therefore repetitious and constitute a lecture to the jury. No instruction was given with respect to plaintiff's burden of proof.

■ The plaintiff properly contends that the defendant has the burden of proving all affirmative defenses raised by him including setoffs, citing several Missouri decisions and § 509.090 RSMo 1959, V.A.

M.S., which is the same as our Civil Rule 55.10, V.A.M.R. The plaintiff further correctly states that, if the jury had believed that the transaction was a guaranteed sales agreement, Mochar would not have been entitled to recover the value of the Minit-Glo which remained unsold in defendant's possession; that, if the defendant had further sustained his claim to a setoff, the amount of his damages would have been in reduction of the $9,440 which the defendant admitted he owed for Ozark and Minit-Glo charcoal; that, if the jury had found the existence of a guaranteed sales agreement but found against the defendant on his setoff, then the verdict would have been for the plaintiff in the admitted sum of $9,440. The other possible result is the one which occurred; that is, a finding in favor of the plaintiff on all issues. The plaintiff states this is because the defendant sustained neither "of his affirmative defenses". The plaintiff incorrectly concludes that the defendant's answer raises two affirmative defenses.

■ Since Mochar Sales Company asserted the existence of a contract of sale, it had the burden of proving that there was in fact a sale of the Minit-Glo briquets delivered to the defendant. 77 C.J.S. Sales § 55, and 78 C.J.S. Sales § 470; 17A C.J.S. Contracts § 579; 31 C.J.S. Evidence § 104; Griffith v. Continental Casualty Co., 299 Mo. 426, 253 S.W. 1043, 1048[8].

■ The burden of proving that the transaction was a sale which vested title to the Minit-Glo brand briquets in the defendant was on the plaintiff and remained with it throughout the case. This is well illustrated by Gennari v. Prudential Insurance Company of America, Mo., 335 S.W.2d 55, a case cited by the plaintiff which was a suit on an accident policy of insurance in which suit the defendant contended that the insured's death was not caused by accident but by disease. In holding that the defendant had not raised an affirmative defense, the court stated, loc. cit. 335 S.W.2d 60–61[3]: "There can be

no doubt but that under a general denial the defendant has the right to adduce evidence showing the insured died of disease. This is but a means of proving he did not die from accidental cause which the plaintiff has alleged as an essential part of her case. It is wholly illogical to say that this very same evidence turns into an affirmative defense if the answer asserts its substance by alleging death was caused by disease, or that this allegation in the answer is the allegation of an affirmative defense. Such an allegation is entirely consistent with and within the scope of a general denial. It is nothing more than an assertion that he did not die of accidental means, and is not an allegation of an affirmative defense."

As previously noted, the defendant denied that he purchased this particular product and contended that the arrangement was a guaranteed sales agreement which appears to be somewhat in the nature of a consignment in that the title does not pass to the consignee. This defense negates the fact of sale upon which the plaintiff had the burden of proof. The affirmative defense arose out of a collateral agreement or series of agreements under which the plaintiff promised, according to the defendant's contention, to make substantial deliveries by Decoration Day 1959, to package the Minit-Glo properly, and to do certain advertising and promotional work in connection with putting the product on the market. These are the items which gave rise to the claim of setoff.

■ Instruction 3 erroneously imposed on the defendant a greater burden of proof than the law requires and the trial court did not err in granting a new trial for this reason. Alexopoulos v. Simmons, Mo., 371 S.W.2d 229, 231[1, 2]; Highfill v. Brown, Mo., 320 S.W.2d 493, 497[7, 8]; Trump v. Ballinger, Mo., 317 S.W.2d 355, 357[1, 2]. Instruction 4 repeats the misdirection committed in instruction 3 and makes the recovery of setoff items depend upon a breach of a guaranteed sales agreement, whereas defendant's instruction deals with an agreement to furnish Minit-Glo briquets in a marketable condition in time for the beginning of the charcoal season and to do certain advertising in consideration of which the defendant agreed to handle the product, to expend money for salesmen and advertising, and to incur other expenses. Instruction 4 is unusually long for a burden of proof instruction but, having transcended into details, did not go far enough to meet the entire issue presented and is therefore misleading. A short simple instruction on the burden of proof is preferable. Flint v. Loew's St. Louis Realty & Amusement Corp., 344 Mo. 310, 126 S.W.2d 193, 196[7].

■ The complaint that the instructions are repetitious and overemphasize the burden of proof is well taken. In Pearrow v. Thompson, 343 Mo. 490, 121 S.W.2d 811, 816[10], this court stated that where "complaint is made of over emphasizing the burden of proof particularly as to equally balanced evidence and the effect of the jury's inability to determine therefrom the question of what negligence proximately caused plaintiff to be injured, it is only necessary to say that this is a matter usually left to the judicial discretion of the trial court."

After reading the written instructions to the jury, the trial judge orally instructed the jury with respect to the computation of interest. This assignment of error is specified by the trial court as one of the grounds for granting the new trial. Plaintiff's verdict-directing instruction made no reference to the allowance of interest or the date when payment was demanded. After reading the written instructions, the court addressed the jury as follows: "The Court has prepared two verdict forms, you will sign one. You will compute the interest, it is your duty to compute the interest." The defendant's objection that this was an oral instruction which conveyed to the jury the direction that "they should bring in a verdict with money and compute the interest"

was overruled. The verdict was for the plaintiff in "the sum of $25,000 Dollars, with interest thereon at six per cent per annum from August 15, 1959 amounting to $3,875 Dollars, aggregating $28,875 Dollars."

■ Ordinarily interest is allowable only as an incident to a claim for a principal sum of money due and unless the right to it is proved and properly submitted to the jury the allowance of interest is improper. Fleetwood v. Milwaukee Mechanics Ins. Co., Mo. App., 220 S.W.2d 614, 616[5]; Federal Deposit Ins. Corp. v. Farmers Bank of Newtown, 238 Mo.App. 350, 180 S.W.2d 532, 535[2, 3]; Reutner, Klaus & Co. v. Nelson Chesman & Co., Mo.App., 9 S.W.2d 655, 660[15]. Although it was not submitted by any written instruction, interest was computed and awarded by the jury.

■ The statute requiring instructions to be in writing applies to instructions submitting issues to the jury. Section 510.-300, RSMo 1959, V.A.M.S.; Reliable Life Ins. Co. v. Bell, Mo.App., 246 S.W.2d 371, 381[17]; Belk v. Steward, 160 Mo.App. 706, 142 S.W. 485, 486[4]. The allowance of interest was an issue in this case. The oral instruction not only violated the statutory requirement, but was also erroneous because it was incomplete and misleading in that the unrelated direction to the jury to compute the interest is susceptible to the construction that there should be a verdict against the defendant in some amount. What was said in Belk v. Stewart, 142 S.W. 486, is apropos here: "When the jury were told that in arriving at their verdict they might take into consideration the fact that the court would be compelled to double whatever amount of damages they should assess should they find for plaintiff, the court was not only giving an oral instruction, but it was erroneous as well." The error was prejudicial and cannot be cured by remittitur.

■ Appellate courts are more liberal in upholding the trial court's action in

granting a new trial than in reversing and remanding a judgment on the same grounds. Stone v. Engler, Mo., 349 S.W.2d 38, 41[2]; Shaffer v. Sunray Mid-Continent Oil Co., Mo., 336 S.W.2d 102, 106[1]; Coonis v. City of Springfield, Mo., 319 S.W.2d 523, 528[10].

The trial court specified three additional grounds for granting the new trial. One was that the court erred in compelling the defendant during cross-examination to submit to the witness Cecil Cox a memorandum prepared by the witness as a summary of a telephone conversation which he had with the defendant on August 10, 1959, one copy of which was sent to the defendant and another to an official of Mochar, but admission of the memorandum in evidence was refused when offered by the plaintiff. Later on in the trial, the court stated that he believed that he had erred in requiring defendant's counsel to show the memorandum to the witness during his cross-examination. Another specification of error also involving this memorandum was the court's refusal to declare a mistrial when plaintiff's counsel stated in the presence and hearing of the jury that defendant's counsel had failed to read from the exhibit that portion where the defendant promised to pay for the products in question. The other specification is that the trial court erred in failing to declare a mistrial when plaintiff's attorney in the presence and hearing of the jury referred to settlement negotiations conducted by defendant's counsel relating to a return of the Minit-Glo briquets by the defendant.

■ Since we have concluded that the order granting a new trial must be affirmed, it is not necessary to discuss and dispose of these latter three specifications since they are of a nature that are not likely to occur upon a retrial. These specifications are matters in which the trial court has a wide discretion. The trial court has a superior opportunity to observe and determine the overall prejudicial effect of such incidents either singly or in the ag-

gregate, and the appellate court ordinarily does not interfere with the trial court's grant of a new trial on such grounds unless an abuse of discretion is shown. Simpson v. Kansas City Connecting Railroad Co., Mo., 312 S.W.2d 113, 121[6]; Sho-Me Power Corp. v. Fann, 365 Mo. 1042, 292 S.W.2d 91, 95[6]. An abuse of discretion has not been shown.

The trial court did not err in granting a new trial. Accordingly the order granting a new trial is affirmed and the cause remanded.

All of the Judges concur.