In the Matter of the CARE AND
TREATMENT OF Andre
COKES, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 64455.

Missouri Court of Appeals,
Western District.

Dec. 13, 2005.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 31, 2006.

Application for Transfer Denied
Feb. 28, 2006.

Emmett D. Queener, Columbia, MO, for appellant.

Nicole L. Loethen, Jefferson City, MO, for respondent.

Before: HARDWICK, P.J., BRECKENRIDGE and SPINDEN, J.J.

LISA WHITE HARDWICK, Judge.

Andre Cokes appeals from a judgment committing him to the Department of Mental Health (DMH) as a sexually violent predator (SVP). Cokes contends the evidence was insufficient to support the SVP determination, and that the probate court erred in excluding his rebuttal evidence. Finding no error, we affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

Cokes was convicted in 1979 of attempting to sodomize an eleven year-old boy. He served time in prison and was paroled in 1981. In 1983 and 1985, he was convicted of raping two women. Just prior to his scheduled release from prison in August 1999, the State filed a petition to commit Cokes to the DMH as a "sexually violent predator" pursuant to Section 632.486.[1]

Following a jury trial, the probate court entered judgment granting the petition. This court reversed the judgment and remanded for a new trial due to instructional error and the State's failure to establish a

necessary element of proof. *In re Care & Treatment of Cokes*, 107 S.W.3d 317 (Mo. App.2003). At the second jury trial, Cokes was again found to be a SVP and was, therefore, committed to the DMH. Cokes appeals from the Judgment and Commitment Order.

## SUFFICIENCY OF THE EVIDENCE

In his first point on appeal, Cokes contends there was insufficient evidence to support the jury's finding that he is a sexually violent predator. Our review of the sufficiency of the evidence applies the same standard of review as in criminal cases. *Amonette v. State*, 98 S.W.3d 593, 600 (Mo.App.2003). We view the evidence in a light most favorable to the jury verdict, disregarding all contrary evidence and inferences. *Id.* We must determine whether the evidence was sufficient for twelve reasonable jurors to have believed beyond a reasonable doubt that Cokes is a SVP. *Id.* The verdict should not be reversed unless there is a "complete absence of probative fact[s]" to support the jury's conclusion. *Smith v. State*, 148 S.W.3d 330, 335 (Mo.App.2004).

Under Missouri law, a SVP is defined as a prior sexual offender "who suffers from a mental abnormality which makes the person more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility." § 632.480(5). The statute further defines a mental abnormality as "a congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to commit sexually violent offenses." § 632.480(2). The condition must be severe enough that it causes the person "serious difficulty in controlling his behavior." *Thomas v. State*, 74 S.W.3d 789, 791 (Mo. banc 2002). To make a submissible

1. All statutory references are to Missouri Revised Statutes 2000 unless otherwise noted.

case for civil commitment, the State was required to prove beyond a reasonable doubt that Cokes met the definition of a SVP.

Cokes argues the State failed to prove that he has a mental abnormality that renders him more likely than not to engage in predatory acts of sexual violence. Although the State presented evidence of his past criminal behavior, Cokes contends the State did not prove that he is prone to act violently due to a sexual compulsion. Proof of serious difficulty in controlling one's behavior is a key factor that distinguishes the dangerous sexual offender, whose mental abnormality subjects him to civil commitment, from the dangerous, but typical, criminal recidivist. *Id.*

At trial, the State presented two psychiatrists, Dr. Bradley Grinage and Dr. Jay Englehart, who testified that Cokes suffers from multiple mental abnormalities that predispose him to commit sexual violence in the future. Cokes presented two psychologists, Dr. Steven Mandracchia and Dr. Robert Prentky, who concluded that he does not have a mental abnormality and is not a SVP. The jury heard all of evidence and afforded greater weight and credibility to the testimony of the State's experts in determining that Cokes met the definition of a SVP. The fact finder's credibility determinations are entitled to deference as we review the record for the limited purpose of considering whether the evidence supports the Judgment and Order of Commitment. *See In re Care & Treatment of Johnson,* 161 S.W.3d 873, 877 (Mo.App.2005).

Dr. Grinage testified that he conducted a SVP evaluation in December 2003, during which he met with Cokes and reviewed his extensive medical and legal records. Based on the evaluation, Dr. Grinage concluded, to a reasonable degree of medical certainty, that Cokes suffers from three mental disorders: paraphilia "not otherwise specified" (NOS), psychotic disorder NOS, and antisocial personality disorder.

Dr. Grinage explained that paraphilia is a sexual disorder characterized by recurrent urges or behaviors that involve the suffering or humiliation of another person, including having sex with children or other non-consenting adults. Paraphilia involving non-consenting persons falls into the general category of paraphilia NOS, unlike other types of paraphilia, such a pedophilia, that are more specifically categorized.

Dr. Grinage based his diagnosis of paraphilia NOS on the three incidents of non-consensual sex for which Cokes was convicted and incarcerated: his attempted sodomy of an 11–year–old boy in 1979, his forcible rape of an 18–year–old woman in 1981, and his forcible rape of a 25–year–old woman in 1982. In questioning Cokes about why he committed the crimes, Dr. Grinage noted that Cokes appeared to lack any insight about his motivation. Cokes admitted to Dr. Grinage that he "was definitely out of control" at the time of the three incidents.

The diagnosis of psychotic disorder NOS was based on Dr. Grinage's collective assessment of Cokes' schizophrenic reaction to drugs in 1976, his two admissions to a psychiatric hospital in 1976, his paranoid delusions noted during his incarceration, the thought formation problems and thought derailment he experienced in therapy prior to medication, and his dramatic response to anti-psychotic medications.

Dr. Grinage noted additional incidents that supported the diagnosis of Antisocial Personality Disorder: Cokes' multiple arrests, beginning at the age of 10, for fighting, truancy, and sale of drugs; his attendance at a school for children with behavioral disorders; his assault of a young woman during his adolescence; his

multiple violations for drug and alcohol abuse during his incarcerations; and his aggression toward others at the Missouri Sexual Offender Treatment Center before he was medicated.

The combination of these psychotic disorders led Dr. Grinage to conclude that Cokes has serious difficulty controlling his behavior. He observed that Cokes committed two rapes while he was on parole for his first offense of attempted sodomy. Cokes knew he was being monitored but admittedly was unable to restrain himself from the violent sexual attacks. Dr. Grinage testified to a reasonable degree of medical certainty that Cokes' mental abnormality of paraphilia with psychosis makes him "more likely than not to engage in predatory acts of sexual violence if he is not confined in a secure facility."

Dr. Englehart is a senior psychiatrist who treated Cokes at the Missouri Sexual Offender Treatment Center (MSOTC). He agreed with Dr. Grinage's diagnosis of paraphilia NOS, although his own treatment with Cokes did not progress far enough to make that definitive diagnosis. During the treatment program, Dr. Englehart diagnosed Cokes as having thought disorder, a mild form of paranoid schizophrenia, and psychotic disorder NOS.

Dr. Englehart observed Cokes during episodes of paranoia and thought disorder that caused Cokes to believe the general policies at MSOTC were directed at him personally. Cokes reacted with angry outbursts in which he threatened staff and other residents. Dr. Englehart prescribed Zyprexa, an antipsychotic medication. Cokes was initially resistant to taking it, but once the medication began in June 2001, his behavior improved. Dr. Englehart opined that Cokes' response to the medication supports his diagnosis of psychotic disorder. Despite some improvement, however, Cokes was still involved in isolated incidents of assaults on staff and residents even while medicated.

Dr. Englehart testified that Cokes' psychotic disorder contributed to his commission of sexual offenses. He stated unequivocally that Cokes must continue his medication to manage his behavior. However, because Cokes refuses to acknowledge his psychotic disorder, Dr. Englehart believes it is unlikely he would stay on his medication if he is not retained in a structured environment. Dr. Englehart concluded that Cokes "is not safe to be at large."

Cokes made no effort to challenge the expert qualifications of Dr. Grinage and Dr. Englehart at trial. Nor was there any objection to the underlying data or facts presented in support of the opinions rendered by these psychiatrists. As such, the expert testimony was clearly admissible, and it was the jury's duty to assess and weigh the reasonableness of the opinions in light of all the evidence. *State v. Butler,* 24 S.W.3d 21, 25–26 (Mo.App.2000).

The testimony of Dr. Grinage and Dr. Englehart was sufficient to establish that Cokes has one or more mental abnormalities that make him more likely than not to engage in predatory acts of sexual violence if he is not confined in a secure facility. The expert opinions made the necessary connection between the nature of Cokes' paraphilia/psychotic order and his propensity to commit sexual assaults even under supervised release conditions. Viewed in a light most favorable to the judgment, the evidence established beyond a reasonable doubt that Cokes' mental condition is severe enough that it causes him serious difficulty in controlling his behavior. The jury could reasonably rely on this expert evidence in determining that Cokes is a sexually violent predator, as defined in Section 632.480(5). Point I is denied.

## Exclusion of Evidence

 In Point II, Cokes contends the probate court erred in excluding evidence regarding his proposed medication arrangements in the event he was released from secure commitment. The court rejected Cokes' attempt to present evidence that a psychiatrist would provide prescriptions after his release and a family member would aid him in securing and taking any medication prescribed. Cokes argues the evidence was relevant to the jury's determination of whether he was likely to engage in predatory acts of sexual violence if not confined in a secure facility.

 A trial court has considerable discretion in determining whether evidence should be admitted or excluded. *Lewis v. State,* 152 S.W.3d 325, 330 (Mo.App.2004). We will reverse only when the exclusion of evidence shocks the sense of justice or indicates an absence of careful consideration. *Id.* Even then, we will not reverse unless the error had a material effect on the merits of the action. *Id.*

Prior to trial, Cokes requested the probate court to exclude evidence regarding any treatment or medication that would be available if he was or was not committed to a secure facility. The court thereafter made multiple pretrial rulings that neither party could present evidence of what will happen to Cokes depending upon whether he is committed or released.

At trial, both of the State's experts testified that Cokes needed to stay on his medication in order to have any hope of controlling his behavior. Dr. Grinage also testified that Cokes would most likely stop taking the medication if released from commitment. Cokes did not object to Dr. Grinage's testimony, but he sought to present rebuttal evidence that a psychiatrist and a family member would assist him in maintaining a post-release medication regimen. After an offer of proof, the court excluded the evidence based on its pretrial ruling.

The evidentiary exclusion was consistent with our analysis in *Lewis,* a similar SVP case. In that case, the sexual offender, James Lewis, sought to cross-examine his former probation and parole officer to show that he would still be under supervised probation even if he were released following the SVP hearing. *Id.* at 330. The probate court disallowed the cross-examination, despite Lewis' argument that the evidence was relevant in the jury's determination of whether he would be likely to commit sexually violent acts if released from confinement. *Id.* On appeal, we agreed with the probate court, finding that the primary question in a SVP case is whether the offender "suffers from a mental abnormality that makes him more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility." *Id.* at 332 (citation omitted). "The question is not whether some external constraints make it less likely that [the offender] would engage in such acts." *Id.* Accordingly, we held that evidence regarding the nature of any post-release supervision is irrelevant to the jury's determination in a SVP case. *Id.*

Cokes argues that his case is distinguished from *Lewis* because he did not seek to present evidence about potential supervision if released. He contends the evidence regarding his medication arrangements would have allowed the jury to consider whether he has a mental disorder that leaves him unable to pursue treatment voluntarily and, therefore, makes him more likely to re-offend with violent sexual acts.

We disagree that the evidence had any relevance in determining the existence of a mental disorder. The record clearly establishes that Cokes sought to introduce

the testimony of a prescribing psychiatrist and a family member in order to show that he had support structures in place to help him remain medically compliant during any period of release. These are precisely the type of "external constraints" that *Lewis* deemed irrelevant in a SVP proceeding. The probate court did not abuse its discretion in excluding the evidence. Point II is denied.

The Judgment and Commitment Order is affirmed.

All concur.