In the Matter of the Care and Treatment of John R. VAN ORDEN.

In the Matter of the Care and Treatment of Richard Wheeler, a/k/a Richard D. Wheeler, a/k/a Richard Dale Wheeler.

Nos. SC 89224, SC 89408.

Supreme Court of Missouri, En Banc.

Dec. 16, 2008.

---

Emmett D. Queener, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Alana M. Barragan–Scott, for Respondent.

WILLIAM RAY PRICE, JR., Judge.

Richard Wheeler and John Van Orden previously were convicted of sexually violent offenses. Because of their previous convictions, the state filed a petition for civil commitment of Van Orden and Wheeler as sexually violent predators pursuant to section 632.480 et seq.[1] The court, in the case of Wheeler, and the jury, in the case of Van Orden, found that they met the definition of a "sexually violent predator" by clear and convincing evidence pursuant to section 632.495, and judgment was entered ordering their commitment.

Van Orden and Wheeler appeal their respective judgments on several grounds.

---

1. All statutory references are to RSMo 2000, unless otherwise noted.

They both argue that section 632.495[2] is unconstitutional because due process requires that the state prove that a person meets the definition of a "sexually violent predator" beyond a reasonable doubt. They also both argue, although for different reasons, that the state failed to strictly comply with the terms of section 632.483.1[3] in the civil commitment proceedings. Van Orden argues separately that the trial court erred in failing to define "clear and convincing evidence" in the jury instructions as well as in admitting testimony about the results of the Static-99 actuarial instrument.

Because Wheeler and Van Orden challenge the validity of section 632.495, this Court has exclusive jurisdiction pursuant to article V, section 3, of the Missouri Constitution.

The provision requiring the burden of proof of clear and convincing evidence in section 632.495 is constitutional, and the phrase "clear and convincing evidence" is not required to be defined in the jury instructions. Van Orden and Wheeler fail to show that the state did not comply with section 632.483.1 or that the trial court abused its discretion in admitting the testi-

mony on the Static-99. The judgments are affirmed.

## I. FACTS

### A. Richard Wheeler

Richard Wheeler was born in 1947. Wheeler has a history of sexually violent behavior, usually involving children. In 1967, Wheeler was charged with sodomy for allegedly molesting his nine-year-old male cousin and was admitted to Fulton State Hospital. Four years later, in 1971, he was charged with molesting a minor child, a four-year-old female who lived in his neighborhood, and was sentenced to one year in jail. In 1981, Wheeler was convicted of first-degree sexual abuse of an adult woman and was sentenced to two years in prison with five years probation. Wheeler's wife subsequently filed for dissolution of marriage, asserting as a basis that Wheeler sexually abused their son.

In 1996, Wheeler pleaded guilty to first-degree sexual misconduct involving an eleven-year-old boy and received two years probation. A year later, in April 1997, Wheeler was convicted of first-degree statutory sodomy involving a four-year-old boy

---

**2.** Section 632.495(1) states in pertinent part:

The court or jury shall determine whether, by clear and convincing evidence, the person is a sexually violent predator. If such determination that the person is a sexually violent predator is made by a jury, such determination shall be by unanimous verdict of such jury. Any determination as to whether a person is a sexually violent predator may be appealed.

**3.** Section 632.483.1 provides:

When it appears that a person may meet the criteria of a sexually violent predator, the agency with jurisdiction shall give written notice of such to the attorney general and the multidisciplinary team established in subsection 4 of this section. Written notice shall be given:

(1) Within three hundred sixty days prior to the anticipated release from a correctional center of the department of corrections of a person who has been convicted of a sexually violent offense, except that in the case of persons who are returned to prison for no more than one hundred eighty days as a result of revocation of postrelease supervision, written notice shall be given as soon as practicable following the person's readmission to prison;

(2) At any time prior to the release of a person who has been found not guilty by reason of mental disease or defect of a sexually violent offense; or

(3) At any time prior to the release of a person who was committed as a criminal sexual psychopath pursuant to section 632.475 and statutes in effect before August 13, 1980.

and was sentenced to ten years. During this period of incarceration, Wheeler continually refused sex offender treatment and continued to engage in sexually offending behaviors. Prior to his release, the psychologist for the department of corrections conducted an end of confinement review to determine if Wheeler met the definition of a "sexually violent predator." During the review process, the psychologist requested and received information from the attorney general. After determining that Wheeler may meet the criteria, she sent notice to the attorney general, and he filed a petition for commitment.

At the probable cause hearing, Wheeler filed a motion to dismiss based on the state's failure to strictly comply with the statutory procedure in section 632.483.1 because the psychologist contacted the attorney general prior to completing the end of confinement review. The court overruled the motion and ordered a psychiatric evaluation. Prior to trial, Wheeler filed a motion to declare the 2006 amendment to section 632.495 unconstitutional because it reduced the burden of proof from beyond a reasonable doubt to clear and convincing evidence. The court overruled the motion and a bench trial was held. The court found that Wheeler met the definition of a "sexually violent predator" and ordered commitment.

## B. John Van Orden

John Van Orden was born in 1962. In 1987, Van Orden pleaded guilty to sexual misconduct for his sexual contact with his sixteen-year-old niece and received two years unsupervised probation. In 1992, Van Orden was convicted of first-degree sexual abuse for the abuse of his five-year-old daughter. He was sentenced to four years, and his parental rights were terminated based upon this abuse and the abuse of his four-year-old son. While incarcerated, Van Orden attended a sex offender treatment program but terminated treatment in the second phase.

In 1998, he was convicted of first-degree child molestation for abuse of a four-year-old female and was sentenced to seven years. Van Orden completed the first two phases of sex offender treatment and was released on parole in 2004, at which time he stopped attending treatment. Van Orden violated the conditions of his parole and was returned to prison. He was released on parole a second time and was arrested on September 6, 2005 for violating its conditions, including consuming alcohol and receiving unsuccessful termination from sex offender treatment. Van Orden was transported to the Fulton Reception and Diagnostic Center.

On October 5, 2005, the department of corrections sent written notice to the attorney general that Van Orden may meet the definition of a "sexually violent predator." The state filed its petition for Van Orden's commitment on October 14, 2005. The board of probation and parole issued an order of revocation on October 20, 2005.

The court found probable cause and ordered a formal hearing. Van Orden filed a motion to dismiss the petition, arguing that the state failed to strictly comply with section 632.483.1 because the petition was filed prior to the revocation of parole. The trial court overruled the motion and ordered a psychiatric evaluation. Van Orden, similarly to Wheeler, filed a motion to declare the 2006 amendment to section 632.495 unconstitutional because it reduced the burden of proof from beyond a reasonable doubt to clear and convincing evidence. The trial court overruled the motion.

A jury trial was held in May 2007. The state's evidence included the testimony of Dr. Mandracchia, a psychologist, who diagnosed Van Orden with pedophilia and anti-

social personality disorder and found that he was more likely than not to reoffend if not committed. He based this assessment on the results of the Static–99 actuarial test, which measures a person's likelihood of reoffending, as well as his own assessment of Van Orden's risk factors, including anti-social personality disorder, alcoholism, offense pattern of sexually deviant behavior, and the fact that he offended while under supervision.

At the instruction conference, Van Orden objected to the burden of proof on the basis that "clear and convincing evidence" should be defined. Specifically, Van Orden argued that the instruction should include:

> Clear and convincing evidence means that you are clearly convinced of the affirmative of the proposition to be proved. This does not mean that there may not be contrary evidence ... For evidence to be clear and convincing it must instantly tilt the scales in the affirmative when weighed against the evidence in opposition and your mind is left with unabiding conviction that the evidence is true.

The trial court overruled the objection and submitted the instructions to the jury without the additional language. The jury found that Van Orden was a sexually violent predator. Judgment of commitment was entered.

## II. ANALYSIS

### A. The Sexually Violent Predator Commitment Proceedings

Section 632.480 et seq. provides the procedure for civil commitment of sexually violent predators. To qualify for commitment as a sexually violent predator, the person must have either pleaded guilty or been found guilty by reason of a mental disease or defect of a sexually violent offense or have been committed as a criminal psychopath pursuant to section 632.475. Section 632.480(5). The person also must be found to suffer from "a mental abnormality which makes the person more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility." *Id.*

If the person is currently in the custody of the department of mental health or the department of corrections, the proceedings for commitment begin prior to the person's release. Section 632.483. The psychologist completes an end of confinement review and sends written notice to the attorney general and the multidisciplinary team if the person may meet the definition of a "sexually violent predator." *Id.* If the multidisciplinary team and the prosecutorial review committee confirm that finding, the attorney general files a petition for commitment. Section 632.486.

The court will determine if probable cause exists and hold a formal hearing. Section 632.489. If the probable cause determination is made, the court orders a psychiatric evaluation and holds a trial sixty days after the evaluation. Section 632.489.4. The person may request a jury trial and has a right to counsel at all stages of the proceeding. Section 632.492.

Section 632.495(1) provides that the court or jury "shall determine whether, by clear and convincing evidence, the person is a sexually violent predator." Prior to the 2006 amendment, the court or jury was required to find that the person is a sexually violent predator beyond a reasonable doubt.

### B. Constitutionality of Section 632.495

Van Orden and Wheeler argue that section 632.495 is unconstitutional because due process requires the state to prove they are subject to commitment beyond a

reasonable doubt.[1] They argue that the proceedings affect a fundamental liberty interest because the proceedings may subject them to indefinite commitment. Further, they argue that it is feasible for the state to meet this burden of proof because many other states with similar commitment proceedings require it.

▪▪▪ Due process requires the use of a burden of proof that "reflects not only the weight of the private and public interests affected, but also a societal judgment about how the risk of error should be distributed between the litigants." *Jamison v. State, Dept. of Social Servs.*, 218 S.W.3d 399, 411 (Mo. banc 2007). In the usual civil litigation, the burden of proof is preponderance of the evidence because private interests predominate; therefore, the litigants share the risk of error equally. *See Addington v. Texas*, 441 U.S. 418, 423, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). In civil cases that involve a fundamental right or liberty, due process lessens the risk of an erroneous decision by requiring proof by clear and convincing evidence. *Id.* at 424, 99 S.Ct. 1804. In criminal proceedings, because of the implication on the defendant's liberty interest, the state has the burden of persuading the factfinder of guilt beyond a reasonable doubt, a burden that imposes almost the entire risk of error on the state. *See In re Winship*, 397 U.S. 358, 363–64, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

The Supreme Court of the United States found that clear and convincing evidence was an appropriate burden of proof in civil commitment proceedings. *Addington*, 441 U.S. at 432–33, 99 S.Ct. 1804. The Court

specifically found that proof beyond a reasonable doubt was not constitutionally required because the state was not exercising its power in a punitive sense and the continuing opportunities for review minimized the risk of error. *Id.* at 427–31, 99 S.Ct. 1804. The Court also questioned the feasibility of meeting the higher burden because of the uncertainties of psychiatric diagnosis. *Id.* The Court found that the precise burden, whether clear and convincing evidence or beyond a reasonable doubt, was a matter of state law. *Id.* at 433, 99 S.Ct. 1804.

Whether a beyond a reasonable doubt or clear and convincing evidence burden of proof is utilized to commit sexually violent predators is a matter of legislative prerogative. *See Addington*, 441 U.S. at 433, 99 S.Ct. 1804. Although the proceedings involve a liberty interest, they are civil proceedings. The purpose of the proceedings is to determine whether the person suffers from a mental abnormality that makes the person more likely than not to engage in predatory acts if not confined. The commitment of those who meet these criteria not only furthers the state interest of protecting society, but also provides them with necessary treatment. The statutory requirements and procedures effectively minimize the risk of an erroneous commitment by requiring the person to have a previous conviction of a sexually violent offense and to undergo psychiatric evaluations. The person is afforded many of the same rights of a criminal defendant, including a formal probable cause hearing, the right to a jury trial, the right to an attorney, and the right to appeal.

---

4. The state argues that Van Orden did not properly preserve the constitutional challenge for appeal because he did not object to the burden of proof in the jury instructions on a constitutional basis; therefore, he failed to preserve the issue continually throughout for

appellate review. However, because there is no challenge to Wheeler's preservation of the constitutional issue and Wheeler and Van Orden present the same argument, the Court will address the constitutionality of section 632.495.

Further, if commitment is ordered, the term of commitment is not indefinite. A person committed as a sexually violent predator receives an annual review to determine if the person's mental abnormality has so changed that commitment is no longer necessary. Section 632.498. The court reviews this report, and even if release is not recommended, the person may file a petition for release with the court at any time. *Id.*

■ Missouri's law for the civil commitment of sexually violent predators constitutionally may utilize the clear and convincing evidence burden of proof. Section 632.495, as amended, is constitutional.[5]

### C. Jury Instructions

■ Van Orden also argues that the burden of proof of clear and convincing evidence must be defined in the jury instructions and that the trial court abused its discretion in rejecting his proposed jury instructions. The decision to submit a definitional instruction is in the sound discretion of the trial court. *See DeWitt v. Am. Family Mut. Ins. Co.*, 667 S.W.2d 700, 711 (Mo. banc 1984). Rule 70.02(b) provides that the instructions should be "simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts." Legal or technical words occurring in the instructions should be defined, but the meaning of ordinary words used in their usual or conventional sense need not be defined. *See Huff v. Union Elec. Co.*, 598 S.W.2d 503, 510 (Mo.App.1980). Further, a short, simple instruction on the burden

of proof is preferred. *See Mochar Sales Co. v. Meyer*, 373 S.W.2d 911, 915 (Mo. 1964).

■ "Clear and convincing evidence" requires no further defining. The words are commonly used and readily understandable, and the phrase provides the jury with sufficient instruction on the applicable burden of proof. The additional phrases offered by Van Orden only would increase the possibility of confusion and complicate the instructions. The trial court did not abuse its discretion in rejecting Van Orden's proposed jury instructions.

### D. Compliance with Section 632.483.1

Van Orden and Wheeler argue that the trial court erred in each case in overruling their motions to dismiss because the state failed to strictly comply with section 632.483.1.

Van Orden argues that the state filed its petition prematurely because section 632.483.1 only permits the state to file the petition if parole is formally revoked.

Section 632.483.1 says nothing about the timing for filing the petition for commitment. Instead, it addresses when the agency in jurisdiction must send written notice to the attorney general that a person in its custody may meet the criteria for a sexually violent predator. This section indirectly affects the filing of the petition only because the attorney general's office cannot file until it receives notice from the agency in jurisdiction.

---

5. The concurring and dissenting opinions seriously question whether the SVP statute could be considered to be a civil commitment statute, rather than a criminal statute, as applied to a person who has been conditionally released and as to whom the court or jury finds that the person's mental abnormality has so changed that the person is not likely to commit acts of sexual violence if released, if the statute is determined to mean that such a person is ineligible to ever receive an unconditional release. That issue is not before the Court in this case as Van Orden and Wheeler have failed to show that they would be entitled to unconditional releases.

Section 632.483.1 provides that if the person has been previously convicted of a sexually violent offense, written notice should be sent to the attorney general 360 days prior to the person's release. *Id.* However, a separate notice procedure is followed for those who committed sexually violent offenses but have been released on parole, providing that

> ... in the case of persons who are returned to prison for no more than one hundred eighty days as a result of revocation of postrelease supervision, written notice shall be given as soon as practicable following the person's readmission to prison ...

 The plain language of the statute does not state that parole must be formally revoked before the agency in jurisdiction can begin the review process for civil commitment. Rather, it is the person's "readmission to prison" that triggers the agency's duty to begin the determination if the person may meet the requirements of the statute and send written notice to the attorney general.

The purpose of this provision is to ensure timely notice is given to the attorney general and the multidisciplinary team to determine if civil commitment proceedings should be initiated. Allowing the agency in jurisdiction to begin their assessment at the earliest opportunity gives the most effect to this purpose.

Van Orden has shown no prejudice resulting from the date of filing of the petition or from the written notice requirements. Van Orden's point is denied.

 Wheeler argues that the state violated section 632.483.1 because the psychologist for the department of corrections contacted the attorney general before completing the end of confinement evaluation. The psychologist requested information from the attorney general's office and received additional police records pertaining to Wheeler's sexual assault of the eleven-year-old boy.

The plain language of the statute does not restrict the contact between the attorney general and the agency with jurisdiction prior to the completion of the assessment and recommendation. Section 632.483.1 only provides the time limits for when the agency in jurisdiction must send written notice to the attorney general to begin the civil commitment process.

 The record reveals no impropriety concerning the contact between the psychologist and the attorney general or any prejudice resulting from it. The psychologist could have received this information from many other sources, and the information was cumulative and consistent with the other records reviewed to complete the report. Wheeler's point is denied.

### E. Admissibility of Static–99

 Lastly, Van Orden argues that the trial court abused its discretion in admitting, over his objection, testimony about the results of the Static–99 actuarial instrument because the instrument only predicts group risk, not individual risk, and this will confuse the jury.

 The trial court's decision to allow evidence at trial is reviewed for an abuse of discretion. *See In the Matter of the Care and Treatment of Murrell,* 215 S.W.3d 96, 109 (Mo. banc 2007). The Court addressed the same argument regarding the admissibility of testimony as to the results of the Static–99 in *Murrell.* The Court found that the testimony was admissible pursuant to section 490.065.3 in cases involving the civil commitment of a sexually violent predator so long as the instrument is used in conjunction with a full clinical evaluation. *Id.* at 110–114.

The trial court did not abuse its discretion in admitting the results of the Static–99. Dr. Mandracchia did not rely solely on the instrument to support the belief that Van Orden has a high risk of reconviction of a sexually violent offense, but conducted an independent review of his risk factors, including anti-social personality disorder, alcoholism, offense pattern of sexually deviant behavior, and the fact that he offended while under supervision.

## III. CONCLUSION

The judgments are affirmed.

STITH, C.J., RUSSELL and BRECKENRIDGE, JJ., concur.

COOK, Sp.J., concurs in separate opinion filed.

WOLFF, J., concurs in opinion of COOK, Sp.J.

TEITELMAN, J., dissents in separate opinion filed.

FISCHER, J., not participating.

Concurring Opinion

JACQUELINE COOK, Special Judge.

I join the opinion of the Court, in full, and add these additional comments. I write separately to highlight concerns about the constitutionality of sec. 632.505 [1] and the sexually violent predator (SVP) statutory scheme following its 2006 amendments. The concerns are not raised directly but may require resolution in future cases.

Both appellants argue before this Court that sec. 632.495 is unconstitutional because due process requires proof beyond a reasonable doubt for an indefinite involuntary civil commitment. Sec. 632.495 was amended by the legislature in 2006 by

changing the burden of proof necessary to find that an individual is a sexually violent predator from beyond a reasonable doubt to clear and convincing evidence.

The question of whether an indefinite involuntary civil commitment may be premised on a finding of clear and convincing evidence was addressed in *Addington v. Texas*, 441 U.S. 418, 425, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). The Court concluded that proof beyond a reasonable doubt was not required, but proof by preponderance of the evidence fell short of satisfying that burden. The Court, therefore, held that a clear and convincing standard of proof met the constitutional requirements of the Fourteenth Amendment in a civil proceeding brought under state law to commit an individual involuntarily for an indefinite period to a state mental hospital. *Id.* at 430–433, 99 S.Ct. 1804. *See, e.g., Murrell v. State*, 215 S.W.3d 96, 104 (Mo. banc 2007)

In the body of both appellants' arguments as to the constitutionality of sec. 632.495, they argue that the creation of sec. 632.505—the section discussing the conditional release of sexual violent predators—implicates the constitutionality of sec. 632.495 because conditional release may mean a loss of liberty for a lifetime. However, the appellants do not raise the constitutionality of sec. 632.505 or the constitutionally problematic nature of the entire SVP statutory scheme. This Court, of course, should only address the issues presented in the points relied on. *State v. Brookshire*, 325 S.W.2d 497, 500 (Mo. banc 1959). A party cannot expand the issues presented before a court for review simply by discussing issues within the body of the argument. *Pruellage v. De Seaton Corp.*, 380 S.W.2d 403, 405 (Mo. banc 1964). The appellants sought review of the constitutionality of the clear and convincing stan-

1. All statutory references are to RSMO 2000, unless otherwise noted.

dard of proof for an indefinite civil commitment. That question is resolved by this Court's principal opinion.

This Court previously has found that the legislature intended the SVP statutes to be civil in nature. *Elliott v. State*, 215 S.W.3d 88, 93 (Mo. banc 2007). A court will reject the legislature's manifest intent only where a party challenging the act provides the clearest proof that the statutory scheme is so punitive in either purpose or effect as to negate the state's intention. *Kansas v. Hendricks*, 521 U.S. 346, 361, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997).

In the cases presently before the Court, the appellants fail to address the legislative history of the SVP act or other factors necessary to evaluate the civil or criminal nature of the statutes. *See, e.g., Hudson v. United States*, 522 U.S. 93, 100, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997); *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 169, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). The appellants, therefore, do not meet the "clearest proof" standard necessary for this Court to find that the SVP statutory scheme was so punitive in nature as to warrant the burden of proof required in criminal cases—beyond a reasonable doubt.

While the constitutionality of sec. 632.505 and the constitutionality of the entire statutory scheme of the SVP statutes may not be properly before the Court today, the concerns raised by appellants regarding the 2006 amendments, alluded to both in their briefs and in their arguments, may require future review by this Court when squarely presented.

A state may enact SVP statutes providing for the involuntary civil commitment of dangerous persons "provided the commitment takes place pursuant to proper procedures and evidentiary standards." *Murrell*, 215 S.W.3d at 103–104, (citing *Kansas v. Hendricks*, 521 U.S. at 357, 117 S.Ct.

2072; *Foucha v. Louisiana*, 504 U.S. 71, 80, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992)). In *O'Connor v. Donaldson*, the Supreme Court held that a finding of mental illness alone will not justify locking up a person against his will for an indefinite period of time. 422 U.S. 563, 575, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975). "Rather due process requires that a person be both mentally ill and dangerous in order to be civilly committed; the absence of either characteristic renders involuntary confinement unconstitutional." *Murrell*, 215 S.W.3d at 104 (citing *Foucha v. Louisiana*, 504 U.S. at 77, 112 S.Ct. 1780; *Kansas v. Hendricks*, 521 U.S. at 358, 117 S.Ct. 2072). "The individual must not only be dangerous at the time of, but also during, commitment, for 'if his involuntary confinement was initially permissible, it could not constitutionally continue after a basis no longer existed.'" *Murrell*, 215 S.W.3d at 104 (quoting *O'Connor v. Donaldson*, 422 U.S. at 575, 95 S.Ct. 2486).

Appellants contend that sec. 632.505, the conditional release section, provides for loss of liberty and as such violates due process. In fact, loss of liberty may be permissible if the person has a mental illness or mental abnormality and poses a danger. *See Seling v. Young*, 531 U.S. 250, 261–262, 121 S.Ct. 727, 148 L.Ed.2d 734 (2001) (citing *Kansas v. Hendricks*, 521 U.S. at 366, 117 S.Ct. 2072 (no federal constitutional bar to civil commitment of individuals with untreatable conditions because the state has an interest in protecting the public from dangerous individuals with treatable as well as untreatable conditions)). However, while loss of liberty may be permissible, sec. 632.505 may pose due process concerns because: (1) the statute provides for a form of commitment or confinement, albeit conditional, without the requisite finding of dangerousness; and (2)

it fails to provide sufficient procedural due process protections.

Sec. 632.505.1 provides that:

> Upon determination by a court or jury that the person's mental abnormality has so changed that the person is not likely to commit acts of sexual violence if released, the court shall place the person on conditional release pursuant to the terms of this section. The primary purpose of conditional release is to provide outpatient treatment and monitoring to prevent the person's condition from deteriorating to the degree that the person would need to be returned to a secure facility designated by the director of the department of mental health.

Section 632.505.5 states that a person conditionally released "remains under the control, care and treatment of the department of mental health." A restraint of liberty, continued without opportunity of review or the possibility of unconditional release or discharge, would raise serious due process concerns. *Jones v. United States,* 463 U.S. 354, 361, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983) ("It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection"). Conditional release, which mandates that an individual still is committed to the department of mental health, constitutes a restraint of liberty that requires due process protections.

Missouri's SVP statute requires a finding that, to be committed, the individual: (1) has a history of past sexually violent behavior; (2) a mental abnormality; and (3) the abnormality creates a danger to others if the person is not incapacitated. Sec. 632.480(5); *Murrell,* 215 S.W.3d at 105. Section 632.505 describes the requirements for conditional release from that commitment: Once a court or jury determines that "the person is not likely to commit acts of sexual violence if released," the court shall place the person on conditional release pursuant to the terms of the statute. However, the finding that a person no longer poses a danger *does not* result in complete restoration of that person's liberty. Once the person no longer poses a danger, the person shall be *conditionally* released. Those conditions, which include "outpatient treatment and monitoring," are, in fact, a form of moderated commitment. If commitment is predicated on a finding of dangerousness, once the person is found to be no longer dangerous, due process requires that the person be released—*fully* released—from commitment. After a finding that the person is not dangerous, such commitment, even if it is under a less restrictive setting, violates due process. *Murrell,* 215 S.W.3d at 104; *Care and Treatment of Coffman,* 225 S.W.3d 439, 446 (Mo. banc 2007); *see also Kansas v. Hendricks,* 521 U.S. at 371, 117 S.Ct. 2072 (J. Kennedy, concurring) (noting that if civil confinement becomes a mechanism for general deterrence, its constitutionality may be invalidated); *O'Connor v. Donaldson,* 422 U.S. at 574, 95 S.Ct. 2486 (mere public intolerance or animosity cannot constitutionally justify the deprivation of a person's physical liberty).

This Court previously has found, reviewing the SVP statutory scheme prior to 2006 amendments, that a person is not committed as an SVP indefinitely because the SVP statutory scheme provided for "a current examination of the person's mental condition made once every year by the director of the department of mental health or designee." Sec. 632.498. If the director found that the person's mental abnormality had so changed that the person was not likely to commit acts of sexual violence if released, the committed person could petition the court for release. Even if the director did not determine that the

person qualified for release, the person committed still could petition the court for discharge. *Schottel v. State,* 159 S.W.3d 836, 839 (Mo. banc 2005); sec. 632.498, 632.501, RSMo 2000. Specifically, sec. 632.498.1, RSMo 2000, required that the court shall conduct an annual review of the status of the committed person. This Court, citing *Kansas v. Hendricks,* has noted that the duration of confinement is linked to the stated purposes of commitment, namely to hold the person until his mental abnormality no longer causes him to be a threat to others, *Murrell,* 215 S.W.3d at 105; that the annual review mechanism "ensures involuntary confinement that was initially permissible will no longer continue after the basis for it no longer exists." *Id.*

The 2006 amendments to the statutory scheme, however, do away with the annual review when conditional release is implemented. Sec. 632.498.1 now states that "[t]he court shall conduct an annual review of the status of the committed person. The court shall not conduct an annual review of a person's status if he or she has been conditionally released pursuant to sec. 632.505." Further statutory safeguards to ensure that a person is no longer involuntarily committed if the requirements of mental illness or abnormality and dangerousness do not exist have been removed. Prior to the 2006 amendments, the committed person was provided an annual written notice of the person's right to petition the court for release over the director's objection. Sec. 632.498, RSMo 2000. The 2006 amendment specifically eliminated from the notice requirements the committed person who has been conditionally released. Sec. 632.498.2.

Prior to the 2006 amendments, a person confined under the SVP statutes could be discharged from confinement altogether. Sec. 632.498, RSMo 2000. The 2006 amendments provide that even if the court or jury finds that the person's mental abnormality has so changed that the person is not likely to commit acts of sexual violence if released, the person "shall be conditionally released as provided in sec. 632.505." A review of the statutory scheme following the 2006 amendments casts doubts on whether an unconditional release or discharge is ever available to a person confined under the SVP statutes. The failure to provide a person committed under the SVP statutes a procedure by which to seek unconditional release or discharge may very well violate the Due Process Clause. *Carey v. Piphus,* 435 U.S. 247, 259, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) (the right to procedural due process is absolute); *Cf., Seling v. Young,* 531 U.S. at 255, 121 S.Ct. 727 (State of Washington SVP statutory scheme, which included conditional release as a less restrictive alternative to secured confinement, upheld when conditional release was subject to annual review until person unconditionally released and where person still had right to seek discharge from commitment); *Kansas v. Hendricks,* 521 U.S. at 366, 117 S.Ct. 2072 (Kansas SVP Act constitutional when a confined person may be immediately released from confinement if adjudged to be safe at large); *Care and Treatment of Coffman,* 225 S.W.3d at 446 (if committed person can demonstrate he is no longer likely to commit sexually violent offenses, he is entitled to release).

Lastly, if called to consider the impact the indefinite conditional release statute has had on the entire SVP statutory scheme, this Court may be compelled to find that such an indefinite restraint of liberty has made the SVP act so punitive in purpose or effect that it no longer can be considered civil in nature—requiring a higher burden of proof.

While I concur with the Court's decision based upon the question squarely placed before it, I believe that a specific challenge to the constitutionality of sec. 632.505, which appears to provide for an indefinite restraint of liberty without a finding of dangerousness or a procedure by which to challenge such indefinite restraint of liberty, may require a different result.

## Dissenting Opinion

### RICHARD B. TEITELMAN, Judge.

I respectfully dissent. In *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), the United States Supreme Court determined that the gradual transition of juvenile delinquency proceedings into a process that was tantamount to a traditional criminal proceeding warranted the application of criminal due process safeguards in juvenile courts. *Id.* at 365–366, 90 S.Ct. 1068. The same transition that occurred in juvenile delinquency proceedings now has occurred in Missouri's SVP law. Regardless of the state's characterization of the SVP law as a civil commitment proceeding, the text of the law and the reality of its application reveal a process whereby the state exercises the power to impose a permanent, punitive restraint on individual liberty. Consequently, I would hold that due process requires the exercise of this power to be conditioned upon proof beyond a reasonable doubt of each of the statutory prerequisites for commitment.

As stated in the majority opinion, the United States Supreme Court held in *Addington v. Texas*, 441 U.S. 418, 433, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979), that a clear and convincing burden of proof constitutionally was permissible in a civil proceeding to commit an individual indefinitely and involuntarily to a state mental hospital. The Court, however, did not hold that the clear and convincing burden of proof would be sufficient in every civil commitment proceeding. Instead, the Court's holding was premised on the following propositions: (1) civil commitment is not punitive; (2) the beyond-a-reasonable-doubt standard historically has been reserved for criminal cases; (3) ongoing review of an individual's condition provides continuous opportunities to correct an erroneous commitment decision; and (4) the beyond-a-reasonable-doubt standard is not workable in the civil commitment context. These propositions applied to the facts of *Addington* but do not apply to the text of the SVP law or the reality of its application.

The first and primary proposition in *Addington* was that the civil commitment statute at issue was remedial, not punitive. *Id.* at 428, 99 S.Ct. 1804. The same cannot be said of Missouri's SVP law.

Section 632.505.1 provides for conditional release "[u]pon determination by a court or jury that the person's mental abnormality has so changed that the person is not likely to commit acts of sexual violence if released. . . ." Section 632.505.5 provides that a conditionally released person "remains under the control, care and treatment of the department of mental health." The net result of these provisions is that an individual who is rehabilitated successfully is committed permanently to the department of mental health. If the purpose of the SVP law is purely remedial, then successful remediation of the mental condition that caused the commitment should result in an opportunity for an unconditional release. Once the remedial purpose has been fulfilled, the continued deprivation of individual liberty amounts to nothing but a punitive sanction. Unlike *Addington*, the appellants in this case forever will be subject to state oversight, even if the state determines that neither man poses a danger to others.

The second proposition in *Addington* was that the beyond-a-reasonable-doubt standard historically has been reserved for criminal cases. However, in the three decades since *Addington* was decided, a number of states have chosen to employ the beyond-a-reasonable-doubt standard in SVP statutes. Prior to the enactment of section 632.505 in 2006, Missouri also required proof beyond a reasonable doubt. The relatively recent advent of SVP statutes throughout the nation has rendered the historical observation of *Addington* less true today than it was when the case was decided in 1979.

The third proposition in *Addington* was the Court's recognition that there would be ongoing review of the individual's mental condition. *Id.* at 428, 99 S.Ct. 1804. If the committed individual recovered, he was entitled to immediate release. *Id.* at 422, 99 S.Ct. 1804. Like the commitment statute in *Addington*, the SVP law provides opportunities for ongoing review of an individual's condition. Unlike the statute in *Addington*, section 632.505 does not permit an unconditional release upon proof of successful treatment of the mental condition that caused the commitment in the first place. Moreover, as the state admitted in oral argument, only a miniscule percentage of those committed pursuant to the SVP law ever have been released as a result of the ongoing treatment and evaluation process. Both the plain language and actual administration of the SVP law lead to the inescapable conclusion that the initial commitment decision under the SVP law is effectively final. The state should not be able to deprive forever the individual liberty of its citizens without proving

beyond a reasonable doubt the necessity of doing so.

The final proposition underlying *Addington* was the Court's concern that the beyond-a-reasonable-doubt burden of proof would prove unworkable in civil commitment proceedings because of the "lack of certainty and fallibility" of diagnosing mental illnesses. *Id.* at 429, 99 S.Ct. 1804. Experience has shown this concern to be unfounded. From 1999 through 2006, Missouri successfully proved beyond-a-reasonable-doubt the necessity of committing a number of individuals under the SVP act. *See In re Care and Treatment of Cokes v. State,* 183 S.W.3d 281 (Mo.App.2005); *In re Care and Treatment of Spencer,* 171 S.W.3d 813 (Mo.App.2005); *In re Care and Treatment of Collins,* 140 S.W.3d 121 (Mo. App.2004). Actual practice in Missouri and other states has demonstrated that the beyond-a-reasonable-doubt standard does not impose an unreasonable barrier to the civil commitment of dangerous individuals.

As the foregoing discussion demonstrates, the propositions underlying the holding in *Addington* do not apply to Missouri's SVP law. *Addington* is distinguishable and does not foreclose appellants' arguments.[1] More importantly, both the text and administration of the SVP law reveals a process that is, in substantial part, punitive in nature. Given the punitive aspects of the SVP law and the significant distinctions between this case and *Addington*, I would hold that the SVP law is unconstitutional insofar as it permits the state to commit an individual permanently to the care, custody and control of the department of mental health without hav-

---

1. In remanding the case to the state court, the *Addington* court specifically left the "determination of the precise burden equal to or greater than the clear and convincing standard ... to the Texas Supreme Court." *Id.* at 433, 99 S.Ct. 1804. This language specifically indicates that the particulars of a civil commitment statute may require some burden of proof that is more stringent than clear and convincing.

ing to prove the prerequisites to commitment beyond a reasonable doubt.