In the Matter of the CARE AND TREATMENT OF Larry L. COFFMAN, Appellant.

No. SC 87803.

Supreme Court of Missouri, En Banc.

June 12, 2007.

Emmett D. Queener, Office of the Public Defender, Columbia, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Charles Birmingham, Alana Barragan–Scott, Asst. Atty. Generals, Jefferson City, MO, for Respondent.

MICHAEL A. WOLFF, Chief Justice.

### Introduction

In January 2004, a St. Louis jury found that Larry Coffman suffered from pedophilia and a personality disorder and determined that he was a sexually violent predator. Based on this finding, Coffman was committed to a secure Missouri Department of Mental Health facility.

Coffman petitioned for release based on his assertion that he was no longer a sexually violent predator because he was not more likely than not to commit a sexually violent offense if released. The circuit court, probate division, denied his petition without a hearing.

Coffman challenges the denial of his petition and also challenges the constitutionality of the 2004 amendment to section 632.498, which sets forth the procedure for determining whether a sexually violent predator is entitled to release.

The statute is constitutional as written. The two-part hearing procedure does not violate due process or the equal protection clause. Coffman's petition was not frivolous, and the trial court erred in denying it without a hearing. The judgment is reversed. The case is remanded. On remand, the court shall provide Coffman a hearing pursuant to section 632.498.

### Facts and Procedural History

Missouri law provides that Coffman is to remain in the custody of the department of mental health until such time as his "mental abnormality has so changed that [he] is safe to be at large." Section 632.495.2.[1] The law allows Coffman to petition for release upon his own motion. Section 632.498. Coffman petitioned for release in March 2006. The trial court denied his petition without a hearing.

In support of his petition for release, Coffman presented the reports of evaluations by three experts. Dr. Stephen Peterson, a psychiatrist, performed an initial examination and noted that Coffman's medical status had "changed considerably" since his last assessment. Dr. Peterson believed that Coffman suffered from cardiovascular and pulmonary disorders and recommended that Coffman be evaluated by specialists in those two areas.

Dr. Allen Soffer performed the cardiovascular examination. Dr. Soffer did not find any heart disease and suspected that Coffman suffered from pulmonary problems.

Dr. Mark Briete performed a pulmonary examination. Dr. Briete found that Coffman had restricted lung functioning and pulmonary lung disease. Dr. Briete noted that Coffman suffered from shortness of

---

1. All statutory references are to RSMo Supp. 2006, unless otherwise noted.

breath upon exertion and required a wheelchair and supplemental oxygen.

All three doctors recommended that Coffman stop smoking and lose weight through diet and exercise. Neither Dr. Soffer nor Dr. Briete gave an opinion as to whether and to what extent Coffman's physical condition would affect his ability to commit future sexually violent offenses.

After receiving the reports of Dr. Soffer and Dr. Briete, Dr. Peterson completed his evaluation, concluding that Coffman is "severely physically debilitated by his lung disease," that he "is becoming more medically fragile and therefore less dangerous," that the damage "cannot be reversed," that he would eventually suffer congestive heart failure, and that he would require the constant use of supplemental oxygen and a wheelchair. Dr. Peterson believed that Coffman's condition would require him to live in a nursing home or similar care facility. Dr. Peterson determined that, "[t]aken together, the clinical information strongly indicates that Mr. Larry Coffman no longer presents as more likely than not to commit predatory acts of sexual violence because he is too physically debilitated. Certainly, his thinking about his offense has not changed much, but he will be unable to alter his physical state very much. Therefore, any victim out of his immediate reach is safe. He certainly cannot chase anyone down and cannot exert himself without quickly feeling exhausted."

The circuit court denied Coffman's petition without a hearing, finding that the petition was frivolous because Coffman did not allege facts demonstrating that his mental condition had changed or that his mental abnormality no longer existed.

Coffman appeals the trial court's order to this Court, alleging that he is entitled to a hearing and that the 2004 amendment to section 632.498, which increases his initial burden from probable cause to preponderance of the evidence, is unconstitutional.

## Standard of Review

The interpretation of a statute is an issue of law and is therefore reviewed *de novo. Barker v. Barker,* 98 S.W.3d 532, 534 (Mo. banc 2003). Statutes are presumed to be constitutional, and this Court will read the statute in a manner consistent with the constitution whenever possible. *Murrell v. State,* 215 S.W.3d 96, 102 (Mo. banc 2007); *Asbury v. Lombardi,* 846 S.W.2d 196, 199 (Mo. banc 1993).

Section 632.504 allows the circuit court to dismiss a petition without hearing if it is "frivolous," and the circuit court did so here. The state argues that Coffman cannot challenge the constitutionality of section 632.498 because he was denied a hearing under that statute by the circuit court's determination that his petition was frivolous. Since this Court concludes that Coffman's petition was not frivolous and he should have received a hearing, it is proper to address the procedures that should apply at that hearing.

## Discussion

*1. The two-trial discharge procedure of section 632.498 does not unconstitutionally shift the burden of proof to the committed person and is not unduly burdensome*

The states are allowed to enact sexually violent predator statutes that provide for the involuntary civil commitment of certain individuals who are determined to be dangerous to society "if the confinement takes place pursuant to proper procedures and evidentiary standards." *Kansas v. Hendricks,* 521 U.S. 346, 357, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997).

Missouri has provided procedures and evidentiary standards for the designa-

tion—and involuntary civil commitment—of sexually violent predators in sections 632.480 to 632.513. Once a person has been designated a sexually violent predator and committed to a mental health facility, the department of mental health is required to evaluate his mental condition annually. Section 632.498. There are two methods by which a sexually violent predator can obtain release after he has been committed. First, if the director of the department of mental health determines "that the person's mental abnormality has so changed that the person is not likely to commit acts of sexual violence if released," then the director must authorize the person to petition the court for release. Section 632.501. The circuit court then holds a hearing where the state has the burden to show that the petitioner should not be released. *Id.*

Second, if the department of mental health does not conclude that the sexually violent predator should be released, he is nevertheless free to petition for his release at any time. Section 632.498. Coffman attempted to secure release under this provision. Under the 2000 version of the statute, the circuit court was required to set a hearing on the petition unless the petition is frivolous, and, if the court determined that there was probable cause to believe that the person should be released, then a trial was to be held. At this trial, which may be by jury, the state had the burden to prove beyond a reasonable doubt that the person should not be released. Thus, the 2000 statute provided a two-part test: first, the committed person must show probable cause why he should be released; second, the state must show beyond a reasonable doubt why he should not.

Section 632.498 was amended in 2004. The amendment raises the initial showing that must be made by the sexually violent predator from "probable cause" to a "preponderance of the evidence." Coffman argues that this raised burden is unduly burdensome because it shifts the ultimate burden to the sexually violent predator to show that he should be released, rather than requiring the state to demonstrate why he should not be released. Although his release petition was filed after the 2004 amendment took effect, Coffman sought release under the provisions of the 2000 statute, claiming that the 2004 amendment was unconstitutional.

This Court considered a similar due process argument in *In the Matter of the Care and Treatment of Wilbur Schottel*, 159 S.W.3d 836 (Mo. banc 2005). That case determined that the 2000 version of section 632.498 was constitutional, despite requiring the sexually violent predator to make the initial showing. Schottel received a hearing before the trial judge on his petition, but the judge determined at that hearing that Schottel did not provide probable cause to believe that he would not reoffend and, therefore, denied Schottel a second jury trial. *Id.* at 840. Schottel argued that the statute required him to prove that he "would not" reoffend and that this was a higher burden on him than was required by the state to obtain his initial commitment. *Id.* at 841. Schottel argued that the statute therefore violated due process. *Id.* This Court rejected Schottel's "hyper-technical" reading of the statute's term to require him to prove absolutely that he "will not" reoffend. *Id.* at 841–42. Rather, this Court held that the statute, when "read in context," provides that, "at the initial hearing, the legislature merely intends the judge to act in a gatekeeper role. He or she is not asked to reach a final decision as to the person's danger to the community or whether the person is still [a sexually violent predator], but to determine whether *'probable cause exists to believe'*" that the person should

be released. *Id.* at 842 (Emphasis in original).

Under *Schottel*, the initial hearing before the trial judge is not the final controlling decision, and the requirement that the sexually violent predator meet the probable cause burden is not unconstitutional.

The question in this case, therefore, is whether the increase in the sexually violent predator's burden, from probable cause to preponderance of the evidence, changes this analysis.

■ The terms "probable cause" and "preponderance of the evidence" are not defined in the sexually violent predator statute. Those terms, however, have well-understood legal meanings. When a statutory term is not defined by the legislature, courts apply the ordinary meaning of the term as found in the dictionary. *Cook Tractor Co., Inc. v. Dir. of Revenue,* 187 S.W.3d 870, 873 (Mo. banc 2006). "Probable cause" is defined as: "A reasonable ground for supposing that a criminal charge is well-founded." Webster's Third New International Dictionary (1993). "Preponderance" is defined, in part, as "superiority in weight." *Id. See also* Black's Law Dictionary, 6th Edition (1990) defining "preponderance of the evidence," in part, as "greater weight of evidence, or evidence which is more credible and convincing to the mind. . . . The word 'preponderance' means something more than 'weight'; it denotes a superiority of weight, or outweighing." *Id.*

The main difference between a probable cause standard and a preponderance of the evidence standard is that probable cause does not require the fact-finder to weigh conflicting evidence. *See Jamison v. State, Dept. of Social Servs., Div. of Family Servs.,* 218 S.W.3d 399, 411 (Mo. banc 2007). The preponderance of the evidence standard is a weighing standard, where the fact-finder must consider whether the greater weight of the evidence supports release. By changing the standard from probable cause to preponderance of the evidence, the legislature increased the initial burden on the sexually violent predator.

Coffman argues that the 2004 amendment is unduly burdensome because it takes the first trial from one where the judge merely determines whether triable issues exist to one where the judge weighs and evaluates the evidence.

The procedure here is not unduly burdensome. The state has an important interest in protecting society from sexually violent offenders. The sexually violent predator has the opportunity to petition the court for release at any time. When considering the important underlying interest, and the ability of the sexually violent predator to obtain frequent review, it is not unduly burdensome to provide a "gatekeeper" to ensure that only those who make a legitimate claim can obtain a jury trial. Requiring the sexually violent predator to establish his claim by a preponderance of the evidence is not unduly burdensome, and if he meets this standard, he is entitled to release unless the state can prove that he is not so entitled by a higher standard.

Coffman also argues that the amendment is unconstitutional because it "created a bench trial which the individual must win in order to get another trial where his discharge or continued commitment will be finally decided." However, the two-trial system existed before the 2004 amendment and was found to be constitutional in *Schottel;* the only change is the initial burden Coffman must reach in order to proceed to the second trial.

**2. The discharge procedure does not violate the Equal Protection Clause of the Missouri and United States Constitutions**

■ The United States Constitution provides that "[n]o state shall . . . deny to

any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. Similarly, the Missouri Constitution provides, "all persons are created equal and are entitled to equal rights and opportunity under the law." Mo. Const. art. I, sec. 2. Missouri's equal protection clause provides the same protections as the United States Constitution. *Bernat v. State,* 194 S.W.3d 863 (Mo. banc 2006).

■ The determination of whether a statute violates the equal protection clause is a two-part analysis. *In the Matter of the Care and Treatment of Norton,* 123 S.W.3d 170, 173 (Mo. banc 2004). The first step is a determination of whether the classification operates to the disadvantage of a suspect class or impinges on a fundamental right. *Id.* If so, the classification is subject to strict scrutiny and will only be upheld if it is necessary to a compelling state interest. *Id.* If not, the classification is upheld if it is rationally related to a legitimate state interest. *Id.*

■ This Court has previously determined that the sexually violent predator law is subject to strict scrutiny because it affects the fundamental right of liberty. *Id.; Bernat,* 194 S.W.3d at 868. Strict scrutiny therefore applies, and the statute will only be upheld if it is necessary to a compelling state interest and narrowly drawn to protect that interest. *Norton,* 123 S.W.3d at 173. The sexually violent predator statute serves the compelling state interest of protecting society from persons who are likely to commit future sexually violent crimes if not committed. *Id.* at 174.

Coffman argues that the requirement that he demonstrate his entitlement to release by a preponderance of the evidence violates equal protection because "[n]o other person involuntarily civilly committed must make a preliminary showing to a trial court of facts 'warranting' a second trial[.]"

This argument ignores the fact that persons who are committed as sexually violent predators are committed because they are "distinctively dangerous" to society. *Id.* Because the basis for commitment of sexually violent predators is different from general civil commitments, there is no requirement that sexually violent predators be afforded exactly the same rights as persons committed under the general civil standard. *See Bernat,* 194 S.W.3d at 868–69 (discussing hearing procedures that are different for civil commitments and sexually violent predator commitments). The requirement that a sexually violent predator demonstrate his initial right to release by a preponderance of the evidence is narrowly tailored to the state's interest in keeping people committed if it is more likely than not that they will commit sexually violent crimes if released. The amended statute does not violate the equal protection clause.

### 3. Coffman's petition was not frivolous and the circuit court erred in not granting Coffman a hearing on his release petition

■ The trial court found that Coffman's petition for release was frivolous because he did not allege that his mental condition had changed. The state urges that this result is correct because section 632.495 provides that involuntary commitment shall continue until Coffman's "mental abnormality has so changed that [he] is safe to be at large." Since the evidence that Coffman presented was that his physical condition had deteriorated to the point where he would not be able to abuse anyone in the future—not that his mental abnormality had changed—the state argues that he is not entitled to release.

■ The basis for allowing indefinite commitment of sexually violent predators is to protect society from dangerous per-

sons. Because this is a restriction on the fundamental right of liberty, the state may only commit persons who meet certain criteria. Courts have generally recognized—both in the sexually violent predator context and in the general commitment context—that a person may only be involuntarily committed if he is *both* dangerous *and* has some mental illness or abnormality. *Foucha v. Louisiana,* 504 U.S. 71, 77, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992); *Kansas v. Hendricks,* 521 U.S. 346, 358, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997); *In the Matter of the Care and Treatment of Murrell,* 215 S.W.3d 96, 104 (Mo. banc 2007). It violates due process to continue to confine a person who is mentally ill but not dangerous to himself or others. *O'Connor v. Donaldson,* 422 U.S. 563, 575, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975). Therefore, "even if [Coffman's] confinement was initially permissible, it could not constitutionally continue after that basis no longer existed." *Id.* The state argues that the statute covers only mental abnormalities—as though there is a dichotomy that clearly divides the mental from the physical aspects of a person's life. If Coffman can demonstrate that he is no longer likely to commit sexually violent offenses, he is entitled to release because he is no longer dangerous, regardless of whether the reason he is no longer dangerous is primarily mental or physical.

Section 632.504, which grants the trial court the authority to dismiss frivolous petitions, does not define "frivolous." "Frivolous" is defined, in part, as "of little weight or importance: having no basis in law or fact." Webster's Third New International Dictionary (1993). *See also* Black's Law Dictionary, 6th Edition (1990), "a pleading is 'frivolous' when it is clearly insufficient on its face...." Coffman's petition was sufficient to allege a basis to believe that he is no longer dangerous; therefore, he is entitled to a hearing before the circuit court, pursuant to section 632.498. In the hearing Coffman will have the burden to prove, by a preponderance of the evidence, that he no longer meets the standard for involuntary commitment as a sexually violent predator. If the circuit court determines that Coffman has met his burden, then the case shall proceed to a jury trial where the State will have the burden to prove, by clear and convincing evidence,[2] that he is not entitled to release.[3]

Section 632.498 is presumed to be constitutional, and this Court rejects the state's interpretation of the statute as limiting release to persons whose mental abnormality has changed, regardless of dangerousness. Such an interpretation would violate the due process clauses of the United States and Missouri Constitutions.

The state points to considerable evidence in the record indicating that Coffman may be likely to commit future sexually violent offenses, including: (1) many of his current medical conditions were pres-

**2.** Section 632.498 was again amended, effective June 5, 2006, to change the state's burden from "beyond a reasonable doubt" to "clear and convincing evidence." Coffman filed his petition for release in March 2006—before the effective date of the 2006 amendment. This Court recently held, however, that the version of section 632.498 that is in effect at the time of the trial is the controlling version. *State ex rel. Schottel v. Harman,* 208 S.W.3d 889, 891 (Mo. banc 2006). This is because the issue is whether the petitioner is a sexually violent predator at the time of the trial, not whether

he was a sexually violent predator when he filed his petition. *Id.* at 892–93.

**3.** While the state would have the burden of proof at the trial, the statute does not require the state to disagree with the initial trial court's finding that a confined person no longer meets the standard for involuntary commitment. Presumably, if the state does not challenge the court's conclusion, the person can be released without a jury trial.

ent at the time of his prior offenses, (2) his refusal to participate in treatment programs, (3) his stated desire to move to a state without sex offender registration, and (4) his engaging in sexually inappropriate behavior during his commitment. In holding that Coffman presented sufficient evidence to receive a hearing, this Court does not consider whether Coffman's evidence outweighs this evidence that he should not be released. Rather, this Court holds only that Coffman's petition was not frivolous and that the weighing of the evidence should be performed by the circuit court and, if appropriate, by a jury in a second trial.

The judgment of the circuit court is reversed, and the case is remanded. On remand the court shall hold a hearing pursuant to current section 632.498.

STITH, PRICE, LIMBAUGH and WHITE, JJ., concur.

RUSSELL, J., concurs in part and dissents in part in separate opinion filed.

TEITELMAN, J., concurs in opinion of RUSSELL, J.

MARY R. RUSSELL, Judge, concurring and dissenting.

I concur with the majority that section 632.498[1] is constitutional. I respectfully dissent, however, from the majority's conclusion that the trial court erred in dismissing Coffman's petition as frivolous. Pursuant to this Court's standard of review, I would affirm the trial court's decision.

While the majority properly states and follows the *de novo* standard of review for statutory interpretation in finding that section 632.498 is constitutional, it fails to consider or apply the appropriate standard of review for weighing the trial court's dismissal of Coffman's petition.

The standard of review dictates that the trial court's dismissal should be reviewed for abuse of discretion; *i.e.,* its decision may be reversed only if it is clearly against the logic of the circumstances and is so arbitrary and unreasonable that it shocks the sense of justice and indicates a lack of careful consideration. *See, e.g., Romero v. Kansas City Station Corp.,* 98 S.W.3d 129, 137 (Mo.App.2003).

After being denied release by the department of mental health in annual reviews in 2005 and 2006, Coffman filed this petition for release without the director's approval, as authorized in section 632.504. The trial court is instructed by the statute to dismiss Coffman's petition without conducting a hearing if it finds the petition is "frivolous." The majority opinion defines "frivolous" as a test of whether Coffman's petition had no basis in law or fact or whether it was "clearly insufficient" on its face. The majority finds that Coffman's petition was not frivolous because it sufficiently alleges a basis to believe he is no longer dangerous, regardless of the status of his mental condition. I disagree and would affirm the dismissal.

As the majority discusses, the trial court's ultimate role was to determine if Coffman could show that he should no longer be confined as a sexual predator because his mental condition had changed or because he no longer posed a danger to society. The trial court did not abuse its discretion in determining that Coffman's petition failed to allege facts to show that his mental condition had changed or that his mental abnormality no longer existed. The record demonstrated that Coffman's mental condition had not changed: he had not completed treatment; he had confinement violations that included pornographic materials; he was seen engaged in inappropriate sexual behavior—rubbing his

---

1. All statutory references are to RSMo Supp. 2006, unless otherwise indicated.

hand on the leg of another resident; he had stated, "I don't want to change;" and he planned to leave Missouri for a state without a sexually violent predator law.

Further, even had the trial court considered Coffman's dangerousness as required by the majority, Coffman's petition failed to show that he no longer posed a danger to society. The cardiologist and pulmonary specialists commented on Coffman's continuing physical condition, but made no assessments of how his physical limitations prevented him from acting on his mental abnormality to prevent future acts of sexual violence. Despite his physical condition, Coffman stated plans to return to his job truck driving when released. Coffman's expert's attestation that Coffman was no longer dangerous because he could only harm persons in "his immediate reach" failed to consider that Coffman's past sexual acts required no chase: he molested a 10–month old and a 2–year old.

The trial court should not be convicted of abusing its discretion for denying Coffman's petition as frivolous under section 632.504.