

# In the Missouri Court of Appeals
# Eastern District

## DIVISION THREE

| | | |
|---|---|---|
| VINCENT'S JEWELERS, | ) | No. ED102816 |
| | ) | |
| Respondent, | ) | |
| | ) | Appeal from the Circuit Court of |
| vs. | ) | St. Louis County |
| | ) | 14SL-MC16547 |
| STATE OF MISSOURI, | ) | |
| | ) | Honorable Maura B. McShane |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| GOLDEN IMPRESSIONS, d/b/a, | ) | |
| CLARKSON JEWELERS, | ) | Filed: March 15, 2016 |
| | ) | |
| Appellant. | ) | |

**OPINION**

Golden Impressions, d/b/a Clarkson Jewelers ("Clarkson") appeals from the judgment of the trial court denying its petition to return a pair of Rolex watches that Vincent's Jewelers ("Vincent's") bought from Joseph Perou the day after Perou had bought the watches from Clarkson with a bad check. Clarkson argues that Vincent's acted as a "pawnbroker" under section 367.011(3)[1] when it purchased the watches from Perou and, therefore, Vincent's was obligated under section 367.044 to return the "misappropriated" watches. We find, however, that Vincent's did not act as a pawnbroker and is under no obligation to return the watches to

---

[1] All statutory references are to RSMo 2000 unless otherwise indicated.

Clarkson.  Therefore, we affirm the trial court's judgment denying Clarkson's petition.

## Factual and Procedural Background

On November 24, 2014, Joseph Perou purchased two Rolex watches from Clarkson for $16,000 using a bad check.  The next day, Perou took the watches hoping to sell them to Vincent's and spoke with Vincent's employee, Leo Anglo.  Perou told Anglo that he needed to sell the watches in order to pay legal fees stemming from an automobile accident, and that he had purchased the watches from Genovese Jewelers five months prior.  Anglo verified Perou's accident story by finding an internet news article confirming that a vehicle driven by Perou had struck a family's vehicle head on.

After inquiring further about the watches and obtaining bids for their possible subsequent sale, Anglo negotiated the terms of the purchase of the watches from Perou for $10,000.  Under the terms, Perou had the opportunity to repurchase the watches for $11,000 within 60 days if they remained unsold.  Before completing the transaction, Anglo filled out and Perou signed a purchase form that set forth the buy-back offer, that the purchase was final, and that ownership of the watches was transferred to Vincent's.

On December 11, 2014, Perou was arrested in Rolla, Missouri, for various criminal activities including passing bad checks.  The watches were seized and deposited with the court.  Vincent's filed a motion with the trial court seeking the court's order that the watches be returned to Vincent's.  Clarkson, for its part, filed a similar motion asking the court to determine the ownership of the watches.  The court conducted a hearing to adjudicate proper title to the watches.

During the hearing, Anglo testified that despite Perou's opportunity to repurchase the watches, the purchase by Vincent's of the watches was final and unconditional and Vincent's

2

acquired ownership and title and could sell the watches to another buyer at any time.  The purchase form that Perou signed was consistent with Anglo's testimony.  Based on this evidence, the court denied Clarkson's motion to return the watches and found Vincent's to be the title-holder of the watches.

**Standard of Review**

Since this is a court-tried case, we are mindful of the oft-cited and fundamental standard of review that we affirm the judgment unless no substantial evidence supports it, it is against the weight of the evidence, or it erroneously declares or applies the law.  *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976). Moreover, the interpretation of sections 367.011(3) and 367.044 present legal questions that we review de novo.  *See In re Care and Treatment of Coffman*, 225 S.W.3d 439, 442 (Mo.banc 2007) (holding that statutory interpretation is an issue of law reviewed de novo).

**Discussion**

*Vincent's Did Not Act As a Pawnbroker*

Clarkson argues that since Vincent's acted as a "pawnbroker" under section 367.011(3) when it purchased the watches from Perou, it was obligated under section 367.044 to return the watches to Clarkson after Clarkson properly requested the return of the "misappropriated" watches under the pawnbroker statute.  We disagree.

Section 367.011(3) defines a "pawnbroker" as "any person engaged in the business of lending money on pledged goods or engaged in the business of purchasing tangible personal property on condition that it may be redeemed or repurchased by the seller for a fixed price within a fixed period of time."  *See also* St. Louis Cnty. Mun. Code § 818.030(5) (defining "pawnbroker" using identical language).  Under subsection 367.044.6, if a claimant of

3

"misappropriated" property purchased by a *pawnbroker* properly requests its return under subsection 367.044.5, the pawnbroker "shall return the property to the claimant" under the conditions specified in the statute. The initial and dispositive issue, therefore, is whether Vincent's acted a "pawnbroker" in connection with its transaction with Perou.

We find that Vincent's was not a "pawnbroker" because it did not agree to allow the redemption or repurchase of the watches for a fixed price within a fixed period of time. Instead, Vincent's bought the watches outright and was free to resell them to anyone at any time. Anglo testified that he told Perou, "I will offer a number to buy them for, I am buying them *straight out*, but I will give you 60 days, *if I have them* you can buy them back for an agreed amount." (emphasis added). Anglo testified that from the point of purchase by Vincent's, the watches were "available for sale if anybody [came] in and want[ed] them." The buy-back offer stood only "if [the watches] [we]re available and not sold." Anglo concluded that it was "very clear to [Perou] that [Vincent's] was taking ownership and title to the watches."

The purchase form bearing Perou's signature provided that Perou was giving complete ownership of the watches to Vincent's, that Vincent's had the right to sell the watches, and that the purchase was final. Moreover, there is simply nothing in the record to support the conclusion that Vincent's acted as a pawnbroker in connection with its purchase of the watches. Point denied.

*Vincent's Is Not Entitled to an Award of Attorney's Fees*

Vincent's seeks an award of attorney's fees incurred as a result of the proceedings in the trial court and here relating to Clarkson's failed attempt to show that Vincent's was a pawnbroker. If Vincent's is asking us to review the failure of the trial court to award attorney's fees, we decline to do so. Vincent's did not file a cross-appeal as it is required to do if it wants to

4

challenge the trial court's judgment. The request by Vincent's for attorney's fees on appeal is denied.

Missouri follows the "American Rule" regarding attorney's fees which provides that, absent statutory authorization or contractual agreement, each party bears the expense of his or her own attorney's fees. *Tupper v. City of St. Louis*, 468 S.W.3d 360, 374 (Mo.banc 2015). Vincent's asserts that the statutory authority entitling it to attorney's fees is found in subsection 6 of section 367.044: "[i]f a *pawnbroker* refuses to deliver property to a claimant upon a proper demand as described in [section 367.044.5], the claimant may file a petition in a court of competent jurisdiction seeking the return of said property," and "[t]he nonprevailing party shall be responsible for the costs of said action and the attorney fees of the prevailing party." (emphasis added). Vincent's argument fails based on the plain language of section 367.044.6 because the prevailing party must be a *pawnbroker*—not merely an alleged one. Here, since Vincent's did not act as a pawnbroker, the statute does not apply to the request by Vincent's for attorney's fees. Thus, the "American Rule" applies, and Vincent's must bear the expense of its own fees.

## Conclusion

For the reasons stated above, we affirm the judgment of the trial court.

_____
James M. Dowd, Judge

Robert M. Clayton III, P.J., and
Lawrence E. Mooney, J., concur.

5