

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

In re: MATTHEW J. KING,    )
                Appellant,  )
                          )

v.                       )     WD79950
                          )

STATE OF MISSOURI,    )     FILED: January 29, 2019
            Respondent.  )

### Appeal from the Circuit Court of Buchanan County
### The Honorable Patrick K. Robb, Judge

### Before Division Three: Anthony Rex Gabbert, P.J., and
### Victor C. Howard and Alok Ahuja, JJ.

Appellant Matthew King was involuntarily committed to the custody of the Department of Mental Health as a sexually violent predator in 2008. In 2014, King petitioned the Circuit Court of Buchanan County for conditional release pursuant to § 632.498.[1] The circuit court held an evidentiary hearing on King's petition. Following the hearing, the court concluded that King was not entitled to a trial on the merits of his petition for conditional release, because King had failed to prove "by a preponderance of the evidence that [he] no longer suffers from a mental abnormality that makes [him] likely to engage in acts of sexual violence if released." § 632.498.4. King appeals. Because we conclude that the circuit court applied the wrong legal standard in determining whether King was entitled to a merits trial, we reverse, and remand for the circuit court to reevaluate King's evidence under the proper test.

---

[1] Unless otherwise indicated, statutory citations refer to the 2016 edition of the Revised Statutes of Missouri, updated through the 2018 Cumulative Supplement.

## Factual Background

On July 1, 2005, King pleaded guilty in the Circuit Court of Buchanan County to one count of sexual abuse in violation of § 566.100, RSMo 2000, for an incident which occurred in January 2005. Case No. 05BU-CR00091-01. The circuit court sentenced King on August 18, 2005, to serve a sentence of three years' imprisonment.

King was scheduled for release on January 10, 2008. Prior to his release, the State filed a petition pursuant to § 632.486 to have King involuntarily committed as a sexually violent predator. Case No. 08BU-PR00012. Following a jury trial, the circuit court ordered King to be committed. We affirmed King's involuntary commitment in *In re King*, 301 S.W.3d 591 (Mo. App. W.D. 2010) (*mem.*).

On September 5, 2014, King filed a petition for conditional release pursuant to § 632.498, alleging that "he no longer suffers from a mental abnormality that makes him likely to engage in acts of sexual violence if conditionally released."

The circuit court held an evidentiary hearing on King's petition for conditional release on June 29, 2016. King was thirty-one years old on the date of the hearing. He testified that he was sentenced to three years' imprisonment on a charge of sexual abuse for acts committed when he was nineteen years old, and that he had been committed at the Sexual Offender Rehabilitation and Treatment Center ("SORTS") in Farmington since completing his sentence in 2008.

In support of his petition, King offered testimony from forensic psychologist Dr. Luis Rosell. Dr. Rosell began working with King in 2011. Dr. Rosell offered his opinion, to a reasonable degree of psychological certainty, that King was "not more likely than not to re-offend" if conditionally released. Dr. Rosell testified that, in formulating his opinion, he considered the conditions for release described in § 632.505.

The State presented the testimony of Dr. Kimberly Bye, a psychologist at the Southeast Missouri Mental Health Center, who evaluated King in April 2016. Dr. Bye testified that King had made improvements in some areas. She opined to a reasonable degree of psychological certainty "that there is evidence that, since his commitment, Mr. King's mental abnormality has changed." Dr. Bye testified, however, that in her opinion King was not "safe to be at large," because he had not fully addressed all factors that put him at risk of re-offending, and needed to further develop his risk management plan. Dr. Bye testified that she did not consider any of the conditions for release specified in § 632.505 in conducting her evaluation.

The State also submitted the deposition testimony of Dr. Sujatha Ramesh, who wrote an annual review of King in June 2015 while she was employed by the Department of Mental Health. Dr. Ramesh concluded that, while King had "made some treatment progress," in her opinion he had "not yet addressed his most relevant dynamic risk factors enough that there's a change in his risk." The dynamic risk factors which King had failed to address included "his deviant sexual interest [in nonconsensual sex] and his grievance and hostility thinking," which Dr. Ramesh characterized as "pivotal critical issues when it comes to his risk." Dr. Ramesh testified that she had not factored the statutory release conditions described in § 632.505 into her risk assessment, because in her view King's "deviant sexual interest and grievance and hostility are not going to be sufficiently managed just by looking at the condition[s]."

Under § 632.498.4, an involuntarily committed individual is entitled to a merits trial on his or her petition for conditional release "[i]f the court at the hearing determines by a preponderance of the evidence that the person no longer suffers from a mental abnormality that makes the person likely to engage in acts of sexual violence *if released*." (Emphasis added.) During the hearing, the parties disputed the meaning of the statutory phrase "if released." The State argued that,

3

even though King was petitioning for *conditional* release, the court was required to consider whether he presented a risk of committing future acts of sexual violence if released into the community *without restrictions*. King's counsel argued, to the contrary, that under the relevant statutes, King was only entitled to be released under the conditions specified in § 632.505, and that the court must evaluate his risk of re-offense in light of those conditions.

At the conclusion of the evidentiary hearing, the circuit court indicated its agreement with the State's interpretation of the relevant statutes:

> I think it's pretty apparent from reviewing the statutes that he would go on a conditional release, but that's not the standard for the jury to consider or for me to make a determination of whether or not the jury trial is . . . scheduled . . . .
>
> . . . .
>
> [T]he law . . . states that the standard to be applied is if released. And then if I – if that finding is made, is not likely to commit acts of sexual violence if released, the Court shall place the person on conditional release. That's how I read it.

When King's counsel argued that "Dr. Rosell [wa]s entitled to consider the conditions of [King's] release in formulating his opinion," the court responded that "that's not the standard in [§] 632.498." The court agreed with counsel for the State that "Dr. Rosell used the wrong legal standard in evaluating Mr. King."

After the court entered its judgment denying King's petition for conditional release, King filed this appeal.

## Analysis

King argues that the circuit court applied the wrong legal standard in assessing whether he was entitled to a merits trial on his petition for conditional release. The circuit court evaluated King's dangerousness on the assumption that he would be released without restrictions or supervision. King argues, on the contrary, that his risk of re-offense must be assessed in light of the conditions which

4

§ 632.505 requires the court to impose on released offenders. We review this question of statutory interpretation *de novo*. *In re Care and Treatment of Coffman*, 225 S.W.3d 439, 442 (Mo. banc 2007).

Missouri's sexually violent predator laws allow the State to indefinitely, and involuntarily, commit a person who has "pled guilty or been found guilty . . . of a sexually violent offense," if the State proves that the person "suffers from a mental abnormality which makes the person more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility." § 632.480(5). Under Due Process principles, "the 'mental abnormality' and 'dangerousness' [must] be inextricably intertwined, such that 'involuntary civil confinement [is limited] to those who suffer from a volitional impairment rendering them dangerous beyond their control.'" *Murrell v. State*, 215 S.W.3d 96, 104 (Mo. banc 2007) (quoting *Kansas v. Hendricks*, 521 U.S. 346, 358 (1997)). "The result being, . . . that to pass constitutional muster the statute must require a finding of future dangerousness and then link that finding to the existence of a 'mental abnormality' or 'personality disorder' that causes the individual serious difficulty controlling his behavior." *Id.* (citations omitted). "[D]ue process requires that a person be both mentally ill and dangerous in order to be civilly committed; the absence of either characteristic renders involuntary civil confinement unconstitutional." *Id.* (citations omitted); *see also Coffman*, 225 S.W.3d at 446.

The constitutional requirement that an offender both suffer from a mental illness, and present a substantial risk of reoffending, continues beyond the offender's initial commitment. "The individual must not only be dangerous at the time of, but also during, commitment, for 'if his involuntary confinement was initially permissible, it could not constitutionally continue after a basis no longer existed.'" *Murrell*, 215 S.W.3d at 104 (quoting *O'Connor v. Donaldson*, 422 U.S.

563, 575 (1975)); *see also Coffman*, 225 S.W.3d at 446. The Missouri Supreme Court has emphasized that

> commitment pursuant to the SVP statute is not necessarily indefinite, nor a life sentence. "[T]he confinement's duration is instead linked to the stated purposes of the commitment, namely, to hold the person until his mental abnormality no longer causes him to be a threat to others."

*Murrell*, 215 S.W.3d at 105 (quoting *Hendricks*, 521 U.S. at 363).

Section 632.498 ensures that an offender's continued involuntary commitment remains constitutionally justifiable. Section 632.498.1 requires the Director of the Department of Mental Health, on an annual basis, to conduct an examination of the mental health of every involuntarily committed sexually violent predator who has not been conditionally released. If the Director determines in that annual review "that the person's mental abnormality has so changed that the person is not likely to commit acts of sexual violence if released, the director shall authorize the person to petition the court for release." § 632.501. If, on the other hand, the Director determines that release of the offender is not warranted, the offender may nevertheless petition the court for release. § 632.498.3.

Proceedings on a petition for conditional release involve two trials: the first before the court, and the second before the court or a jury (the "merits trial"). During the first trial, the burden of proof is on the offender to prove "by a preponderance of the evidence that the person no longer suffers from a mental abnormality that makes the person likely to engage in acts of sexual violence if released." § 632.498.4. If the court determines that the offender has satisfied this initial burden, then the second, merits trial is held. Section 632.498.5(3) specifies that "[t]he burden of proof at the trial shall be upon the state to prove by clear and convincing evidence that the committed person's mental abnormality remains such

6

that the person is not safe to be at large and if released is likely to engage in acts of sexual violence."

Section 632.498.5(4) specifies the different outcomes which can result from the merits trial:

> If the court or jury finds that the person's mental abnormality remains such that the person is not safe to be at large and if released is likely to engage in acts of sexual violence, the person shall remain in the custody of the department of mental health in a secure facility designated by the director of the department of mental health.  If the court or jury finds that the person's mental abnormality has so changed that the person is not likely to commit acts of sexual violence if released, the person shall be conditionally released as provided in section 632.505.

Prior to 2006, "an offender released from commitment was fully discharged and could not be returned to custody without new findings that the offender was a [sexually violent predator]."  *State ex rel. Schottel v. Harman*, 208 S.W.3d 889, 891 (Mo. banc 2006).  The statute was substantially amended in 2006, however.  The 2006 amendments removed all reference to the "discharge" of an offender from the sexually violent predator commitment statutes.  Instead, the statutes now refer only to the offender's "release" or "conditional release."

In addition, a new § 632.505 was enacted in 2006.  It provides that,

> Upon determination by a court or jury that the person's mental abnormality has so changed that the person is not likely to commit acts of sexual violence if released, the court shall place the person on conditional release pursuant to the terms of this section.  The primary purpose of conditional release is to provide outpatient treatment and monitoring to prevent the person's condition from deteriorating to the degree that the person would need to be returned to a secure facility designated by the director of the department of mental health.

§ 632.505.1.  The statute specifies a substantial number of conditions which the court must place upon an offender entitled to conditional release.  Thus, § 632.505.3 provides in relevant part:

The court shall order that the person shall be subject to the following conditions and other conditions as deemed necessary:

(1) Maintain a residence approved by the department of mental health and not change residence unless approved by the department of mental health;

(2) Maintain employment unless engaged in other structured activity approved by the department of mental health;

(3) Obey all federal and state laws;

(4) Not possess a firearm or dangerous weapon;

(5) Not be employed or voluntarily participate in an activity that involves contact with children without approval of the department of mental health;

(6) Not consume alcohol or use a controlled substance except as prescribed by a treating physician and to submit, upon request, to any procedure designed to test for alcohol or controlled substance use;

(7) Not associate with any person who has been convicted of a felony unless approved by the department of mental health;

(8) Not leave the state without permission of the department of mental health;

(9) Not have contact with specific persons, including but not limited to, the victim or victim's family, as directed by the department of mental health;

(10) Not have any contact with any child without specific approval by the department of mental health;

(11) Not possess material that is pornographic, sexually oriented, or sexually stimulating;

(12) Not enter a business providing sexually stimulating or sexually oriented entertainment;

(13) Submit to a polygraph, plethysmograph, or other electronic or behavioral monitoring or assessment;

(14) Submit to electronic monitoring which may be based on a global positioning system or other technology which identifies and records a person's location at all times;

(15) Attend and fully participate in assessment and treatment as directed by the department of mental health;

(16) Take all psychiatric medications as prescribed by a treating physician;

(17) Authorize the department of mental health to access and obtain copies of confidential records pertaining to evaluation, counseling, treatment, and other such records and provide the consent necessary for the release of any such records;

. . . .

(19) Report to or appear in person as directed by the department of mental health and the department of corrections, and to follow all directives of such departments;

. . . .

(21) Comply with any other conditions that the court determines to be in the best interest of the person and society.

In evaluating the evidence presented at the bench trial, the circuit court was required to determine whether King had proven "by a preponderance of the evidence that [he] no longer suffers from a mental abnormality that makes the person likely to engage in acts of sexual violence *if released.*" § 632.498.4 (emphasis added). The circuit court interpreted the phrase "if released" to refer to a scenario in which King was granted an unconditional, unsupervised release. Based on this interpretation of "if released," the court agreed with the State that King's expert, Dr. Luis Rosell, had "used the wrong legal standard in evaluating Mr. King," because in formulating his opinions he considered the conditions that the court would be required by § 632.505.3 to impose on King if it released him.

In determining whether "if released" in § 632.498.4 refers to conditional release or outright discharge, we rely on ordinary tools of statutory interpretation. "The primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words used in their plain and ordinary meaning." *Dickemann v. Costco Wholesale Corp.*, 550 S.W.3d 65, 68 (Mo. banc 2018) (citation and internal quotation marks omitted). "The provisions of a legislative act must be construed and considered together and, if possible, all provisions must be harmonized and every clause given some meaning." *Id.* (citation and internal quotation marks omitted).

9

"An amended statute should be construed on the theory that the legislature intended to accomplish a substantive change in the law." *Cub Cadet Corp. v. Mopec, Inc.*, 78 S.W.3d 205, 214 (Mo. App. W.D. 2002) (citation and internal quotation marks omitted).

The circuit court erred by interpreting the phrase "if released" in § 632.498.4 as a reference to unconditional, unsupervised freedom. The current sexually violent predator statutes use the terms "release" and "conditional release" interchangeably. Thus, the statutes on multiple occasions refer to a committed person's right to "petition for release" (§§ 632.498.2, 632.501, 632.504), to "the jurisdiction into which the committed person is to be released" (§§ 632.498.3, 632.501), and to "postponement of release" (§ 632.507.2). These statutory provisions can only be read to refer to an offender's release *under the conditions specified in § 632.505*, since that is the only form of "release" which currently exists under the statutes. As the Supreme Court has explained, "[d]espite the fact that the legislature 'has chosen to write these various . . . statutes in slightly different ways and with slightly different language, their plain meaning, as in the statute before us, is clear'" when the various provisions are considered in context. *Care & Treatment of Schottel v. State*, 159 S.W.3d 836, 842 (Mo. banc 2005). "In this context, the legislature's use of the words ['if released'] is . . . merely . . . a shorthand way of referring" to the possibility that the offender will be released *pursuant to the conditions specified in § 632.505. Id.*

The circuit court effectively read the phrase "if released" in § 632.498.4 to refer to the type of unconditional "discharge" which existed under the pre-2006 version of the sexual violent predator statutes. That form of unconditional "discharge" no longer exists, however. As the Supreme Court has explained, following the 2006 amendments to the relevant statutes "[a]n offender released under the amended version of section 632.498 remains committed to custody," and

10

is only entitled to "be 'conditionally released as provided in section 632.505.'" *State ex rel. Schottel*, 208 S.W.3d at 891 (quoting § 632.498.5(4)). The circuit court erred in evaluating the evidence under a release scenario which will not, and cannot, ever exist under the current version of the sexually violent predator statutes.

As we explained in a case involving the commitment of persons found not guilty of a crime by reason of mental disease or defect,

> Conditional and unconditional releases are not the same. They serve different purposes . . . . The legislature created the different forms of release, conditional release and unconditional release, recognizing the value of tailoring the release program to the individual case. The factors to be considered in an unconditional release case differ from those to be considered in conditional release cases. . . . [¶] The different standards for release are designed to balance the committed person's right to freedom from confinement against the community's interest in safety.

*State v. Weekly*, 107 S.W.3d 340, 349 (Mo. App. W.D. 2003). The circuit court in this case erred by applying standards applicable to unconditional release in a case in which King was only eligible for, and was only seeking, conditional release.

As King points out, the circuit court's interpretation of "if released" also creates potential constitutional problems. According to the circuit court's interpretation, to be entitled to *conditional* release, King was required to prove that he "no longer suffers from a mental abnormality that makes him likely to engage in acts of sexual violence" if he was released *without condition*, and without supervision. Having proved that he did not present a danger if given his unrestricted freedom, however, King would *then* be subject to release under the highly intrusive and restrictive conditions listed in § 632.505.3, and other conditions imposed by the court. As the Missouri Supreme Court has explained, however, even if an individual's involuntary commitment was *originally* justified, "'it could not constitutionally continue after a basis no longer existed.'" *Murrell*, 215 S.W.3d at 104 (quoting *O'Connor*, 422 U.S. at 575). An offender's involuntary commitment is

11

only justified "'until his mental abnormality no longer causes him to be a threat to others.'" *Id.* at 105 (quoting *Hendricks*, 521 U.S. at 363); *see also Coffman*, 225 S.W.3d at 446. If King were able to satisfy the circuit court's standard, and prove that he presents no threat of reoffending if released *without restriction*, we question whether there would then be a constitutionally sufficient basis to subject him to the restrictions found in § 632.505.3.

The phrase "if released" in § 632.498.4 must be read to refer to the type of release King was seeking, and the only type of release that was available to him: namely, release subject to the conditions specified in § 632.505.3. The testimony of King's expert witness, Dr. Rosell, did not apply an incorrect legal standard by referencing the release conditions mandated by § 632.505.3, and his testimony should not have been disregarded by the circuit court on that basis.

King argues that, if this Court concludes that the circuit court applied an incorrect legal standard, this Court should determine on its own that King is entitled to a trial on the merits of his petition for conditional release. We decline to assess the evidence in the first instance on appeal. Section 632.498.4 provides that an offender is entitled to a merits trial only "[i]f the court at the hearing determines by a preponderance of the evidence that the person no longer suffers from a mental abnormality that makes the person likely to engage in acts of sexual violence if released." The Supreme Court has explained that "[t]he preponderance of the evidence standard is a weighing standard, where the fact-finder must consider whether the greater weight of the evidence supports release." *Coffman*, 225 S.W.3d at 444. The Court distinguished the "preponderance of the evidence" standard from the "probable cause" standard in an earlier version of § 632.498, which "d[id] not require the fact-finder to weigh conflicting evidence." *Id.*

Because the standard in § 632.498.4 requires the circuit court to weigh conflicting evidence to determine whether the offender has proven his lack of

12

dangerousness by the greater weight of the evidence, this determination is appropriately made by the circuit court under the correct legal standards, not by this Court on appeal. We therefore remand this case to the circuit court to determine whether King satisfied the standard of § 632.498.4 (interpreted consistently with this opinion), and whether he is therefore entitled to a merits trial on his petition for conditional release.

## Conclusion

The judgment of the circuit court is reversed, and the case is remanded for further proceedings consistent with this opinion.

_____
Alok Ahuja, Judge

All concur.

13