

# In the
# Missouri Court of Appeals
## Western District

IN THE MATTER OF THE CARE     )
AND TREATMENT Of KENNETH   )
SMITH,                            )     **WD82180**
                                  )
        **Appellant,**        )     **OPINION FILED:  January 21, 2020**
                                  )
**v.**                           )
                                  )
**STATE OF MISSOURI,**      )
                                  )
        **Respondent.**     )

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable Mark A. Styles, Jr., Judge

Before Division Two:  Cynthia L. Martin, Presiding Judge, Thomas H. Newton, Judge
and Gary D. Witt, Judge

Kenneth Smith ("Smith") was involuntarily committed to the custody of the

Department of Mental Health ("DMH") as a sexually violent predator in 2002.  In January

2017, Smith petitioned the Circuit Court of Jackson County, Missouri for conditional

release pursuant to section 632.498.[1]  Following an evidentiary hearing, the trial court

concluded in July 2018 that Smith was not entitled to a trial on the merits of his petition

---

[1]All statutory references are to RSMo 2016 as supplemented through the date of Smith's petition, unless otherwise indicated.

for conditional release because he had failed to prove by a preponderance of the evidence that he "no longer suffer[ed] from a mental abnormality that ma[kes] him likely to commit acts of sexual violence if released." Smith appeals. Finding no error, we affirm.

## Factual and Procedural Background[2]

In December 2002, Smith was tried by jury and found to meet the requirements for civil commitment as a sexually violent predator ("SVP"), as provided under sections 632.480 through 632.525.[3] On February 22, 2017, Smith filed a petition for conditional release with the approval of the Director of DMH pursuant to section 632.498. On July 16, 2018, an evidentiary hearing was held to determine whether Smith was entitled to a trial on his petition.

On July 18, 2018, the trial court entered a judgment denying Smith's petition for conditional release, finding that Smith "failed to show by a preponderance of evidence . . . that he no longer suffers from a mental abnormality that makes him likely to engage in acts of sexual violence if released." As a result, Smith was denied a trial on the merits of his petition.

On August 13, 2018, Smith filed a motion to reconsider the judgment. At the same time, Smith filed a request for findings of fact and conclusions of law.[4] On October 4, 2018, the trial court entered a Judgment Denying Motion to Reconsider the Order and

---

[2]"In the appeal of a bench-tried case, the appellate court views the facts in the light most favorable to the trial court's judgment." *Pearson v. AVO General Services*, 520 S.W.3d 496, 500-01 (Mo. App. W.D. 2017).

[3]This determination would have been made pursuant to the version of the relevant SVP statutes in effect in 2002.

[4]Smith's request mistakenly referred to "Rule 73.02" as the authority for requesting findings and facts and conclusions of law, as the proper Rule is Rule 73.01(c). All rule references are to *Missouri Court Rules, Volume I— State, 2018,* unless otherwise indicated.

Judgment of the Court Denying [Smith's] Petition for Conditional Release ("Judgment"). The trial court referred to and effectively granted Smith's request for findings of fact and conclusions of law by including findings and conclusions in the October 4, 2018 Judgment.[5]

Smith timely appeals. Additional facts are discussed as relevant to Smith's point on appeal.

## Analysis

Smith's sole point on appeal asserts that the trial court erred by denying him a trial on his petition for conditional release from the DMH because Smith showed by a preponderance of the evidence that he no longer suffered from a mental abnormality that made him likely to commit acts of sexual violence if conditionally released. Smith contends that the denial of a trial deprived him of due process of law. The State's Brief argues that Smith did not establish by a preponderance of the evidence that he no longer suffers from a mental abnormality that made him likely to commit acts of sexual violence if released, and that it is irrelevant in determining if Smith was entitled to a trial on his petition to consider conditions of release that might be imposed.

---

[5]A trial court is not obligated to make findings of fact and conclusions of law unless a proper request for same is timely made by a party pursuant to Rule 73.01(c) before the "introduction of evidence." However, Rule 73.01(c) authorizes a trial court to consider a request for findings of fact and conclusions of law "at such later time as the court may allow." The trial court thus acted within its discretion when it entered an amended judgment on October 4, 2018 which included findings of fact and conclusions of law. Though Smith's notice of appeal, which was filed *after* entry of the October 4, 2018 amended Judgment, identified the July 2018 judgment as the judgment appealed from, Smith's Brief refers to findings and conclusions found in the amended Judgment entered on October 4, 2018. We treat the judgment appealed from as the amended Judgment entered on October 4, 2018. *See Southside Ventures, LLC v. La Crosse Lumber Co.*, 574 S.W.3d 771, 781-82 (Mo. App. W.D. 2019).

3

"Our review of the denial of a petition for conditional release from the custody of [DMH] is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976)." *State v. Carter*, 551 S.W.3d 573, 575 (Mo. App. W.D. 2018). "We will reverse the trial court's decision only if there is no substantial evidence to support it, unless it erroneously declares or applies the law, or unless it is against the weight of evidence." *Id.*

### *The Statutory Framework for Considering Petitions for Release*

"Missouri has provided procedures and evidentiary standards for the designation -- and involuntary civil commitment -- of sexually violent predators in sections 632.480 to [632.525]." *In re Care and Treatment of Coffman*, 225 S.W.3d 439, 442-43 (Mo. banc 2007). "Once a person has been designated a sexually violent predator and committed to a mental health facility, the department of mental health is required to evaluate his mental condition annually." *Id.* (citing section 632.498). "If the director of the department of mental health determines that the person's mental abnormality has so changed that the person is not likely to commit acts of sexual violence if released, then the director shall authorize the person to petition the court for release." Section 632.501. "The hearing and trial, if any, [on a petition for release] shall be conducted according to the provisions of section 632.498." Section 632.501.

The proceedings on a petition for release thus involve two evidentiary hearings or trials. The first is a hearing before the court. "During the first trial, the burden of proof is on the offender to prove by a 'preponderance of the evidence that the [petitioner] no longer suffers from a mental abnormality that makes the person likely to engage in acts of sexual violence if released.'" *King v. State*, 571 S.W.3d 169, 174 (Mo. App. W.D. 2019) (quoting

4

section 632.498.4). "If the court determines that the offender has satisfied this initial burden, then the second, merits trial is held." *Id.* "Section 632.498.5(3) specifies that '[t]he burden of proof at the [merits] trial shall be upon the state to prove by clear and convincing evidence that the committed person's mental abnormality remains such that the person is not safe to be at large and if released is likely to engage in acts of sexual violence.'" *Id.*

If an offender satisfies his initial burden and secures a merits trial, section 632.498.5(4) explains the possible outcomes which can result:

> If the court or jury finds that the person's mental abnormality remains such that the person is not safe to be at large and if released is likely to engage in acts of sexual violence, the person shall remain in the custody of the department of mental health in a secure facility designated by the director of the department of mental health. If the court or jury finds that the person's mental abnormality has so changed that the person is not likely to commit acts of sexual violence if released, the person shall be conditionally released as provided in section 632.505.

*See King*, 572 S.W.3d at 174. Section 632.505, which addresses conditional release, provides in part that:

> Upon determination by a court or jury that the person's mental abnormality has so changed that the person is not likely to commit acts of sexual violence if released, the court shall place the person on conditional release pursuant to the terms of this section. The primary purpose of conditional release is to provide outpatient treatment and monitoring to prevent the person's condition from deteriorating to the degree that the person would need to be returned to a secure facility designated by the director of the department of mental health.

Section 632.505.1. Section 632.505.3 "specifies a substantial number of conditions which the court must place upon an offender entitled to conditional release." *King*, 571 S.W.3d at 174. Though we need not recount the statutorily required conditions of release, consistent with the purpose of conditional release described in section 632.505.1, they

5

include conditions designed to monitor and control an offender's whereabouts, conduct, medication compliance, and treatment compliance. *See* section 632.505.3.

We clarified in *King* that because any right to release secured by an offender through the two step process described in section 632.498 will necessarily yield conditional release as described in sections 632.498.5(4) and 632.505, the offender's burden in the first hearing is ***not*** to prove that the offender is not likely to commit acts of sexual violence if released unconditionally or unsupervised. 571 S.W.3d at 176. Rather, because "the terms 'release' and 'conditional release' [are used] interchangeably" in the statutes, the "statutory provisions can only be read to refer to an offender's release *under the conditions specified in section 632.505*, since that is the only form of 'release' which currently exists under the statutes." *Id*. (emphasis in original). As such, an offender's burden in the first hearing on a petition for release filed pursuant to section 632.498.3 is to prove "by a preponderance of the evidence that the person no longer suffers from a mental abnormality that makes the person likely to engage in acts of sexual violence if released" under the conditions specified in section 632.505. Section 632.498.4; *King*, 571 S.W.3d at 176-77.

This is consistent with the fact that following the 2006 amendments to the relevant SVP statutes, (the version in effect for our purposes), "'[a]n offender released under the amended version of section 632.498 remains committed to custody,' and is only entitled to 'be 'conditionally released as provided in section 632.505.'"" *King*, 571 S.W.3d at 176 (quoting *State ex rel. Schottel v. Harman*, 208 S.W.3d 889, 891 (Mo. banc 2006) (itself quoting section 632.498.5(4))). Yet, "'[d]ue process requires that a person be both mentally ill and dangerous in order to be civilly committed; the absence of either characteristic

6

renders involuntary civil confinement unconstitutional.'" *Id*. at 173 (quoting *Murrell v. State*, 215 S.W.3d 96, 104 (Mo. banc 2007) (citations omitted)). This due process requirement "continues beyond the offender's initial commitment." *Id*. In other words, a person must suffer a mental abnormality *and* remain a threat to others if conditionally released for continued commitment to pass constitutional muster. *Id*.; *Murrell*, 215 S.W.3d at 104.

With this statutory framework in mind, we turn to Smith's point on appeal.

### *The Judgment is Supported by the Weight of the Evidence*

Smith contends that he established by a preponderance of the evidence that he no longer suffers from a mental abnormality that makes him likely to commit acts of sexual violence if conditionally released. "'[T]he preponderance of the evidence standard is a weighing standard, where the fact-finder must consider whether the greater weight of the evidence supports release.'" *Id*. at 177 (quoting *In re Care and Treatment of Coffman*, 225 S.W.3d at 444).

"When reviewing the record in an against-the-weight-of-the-evidence challenge, this Court defers to the [trial] court findings of fact when the factual issues are contested and when the facts as found by the [trial] court depend on credibility determinations." *Ivie v. Smith*, 439 S.W.3d 189, 206 (Mo. banc 2014). "[A] party [] can contest evidence by cross-examination." *White v. Dir. of Revenue*, 321 S.W.3d 298, 308 (Mo. banc 2010). "A [trial] court's judgment is against the weight of the evidence only if the [trial] court could not have reasonably found, from the record at trial, the existence of a fact that is necessary to sustain the judgment." *Ivie*, 439 S.W.3d at 206. "When the evidence poses two

7

reasonable but different conclusions, appellate courts must defer to the [trial] court's assessment of that evidence." *Id.* (citing *White* 321 S.W.3d at 307-09).

Though the Judgment was entered before this court's decision in *King*, Smith's appellate brief was submitted after this court's decision in *King*. Smith's Brief does not cite *King*, but correctly argues, as held in *King*, that during the first hearing on Smith's petition for conditional release, the trial court was required to consider that Smith would not be released unsupervised and without support. [Appellant's Brief, p. 13] We reject, therefore, the State's argument that "[c]onsideration of conditions of release is . . . inappropriate" during the first hearing on an offender's petition for release, as this argument is untenable following our holding in *King*. [Respondent's Brief, p. 16]

Smith does not argue, however, that the trial court applied an incorrect legal standard to his petition for release. Smith argues only that his evidence satisfied the proper legal standard because he showed by a preponderance of the evidence that "he was no longer more likely than not to reoffend if he was conditionally released," entitling him to a merits trial. [Appellant's Brief, p. 14]. Because the trial court's application of the correct legal standard is not challenged on appeal, we address only whether the trial court erroneously concluded that Smith failed to sustain his burden to establish by a preponderance of the evidence that he was not likely to engage in acts of sexual violence if conditionally released.[6]

---

[6]It is uncontested that Smith continues to suffer from a mental abnormality, namely pedophilic disorder. Smith's evidence at trial confirmed that pedophilic disorder is a life-long chronic disorder that can be treated but not cured. The contested issue in the case was therefore limited to the second characteristic that must exist to prevent continued confinement under SVP statutes from violating due process--whether a mental abnormality continues to present a threat of reoffending if an offender is conditionally released.

Smith highlights that he called three doctors, each of whom testified that it was their opinion that Smith's pedophilic disorder had been effectively treated through his participation in the SORTS[7] program such that he would not pose a danger if released. According to Smith, these doctors collectively testified that Smith understood his risk factors; had the mechanisms in place as a result of treatment to move into the community; had moved past people pleasing behaviors to full accountability and open assessment of his condition; had no recent conduct violations; was not likely to engage in acts of sexual violence if released; and needed to be in the community to effectively further his treatment. Smith's witnesses acknowledged Smith's multiple sexually violent offenses, but noted that all occurred before his participation in the SORTS program, and that control issues that arose after that time occurred early during the SORTS treatment.

Smith argues that the State presented no witnesses, and that as a result, the aforesaid testimony was "uncontroverted." But this ignores that the State materially challenged Smith's witnesses' testimony by vigorous cross-examination. *See White*, 321 S.W.3d at 308 ("[A] party [] can contest evidence by cross-examination."). When factual issues are contested, we defer to the trial court findings of fact particularly when those findings depend on credibility determinations. *Ivie*, 439 S.W.3d at 206. During cross-examination, the State established that Smith had a long history of offending against children; that Smith reported about thirty victims, many unknown; that Smith repeatedly offended each time that he was outside of State custody; that during Smith's commitment within the DMH, he

---

[7]SORTS refers to Sex Offender Rehabilitation and Treatment Services.

9

has continued to disclose previously unknown victims as late as 2013; that each testifying expert witness noted that Smith has a history of "impression management," which causes him to seek the approval of others, including medical personnel charged with evaluating his likelihood of reoffending; that Smith's tendencies to manage impressions allowed him in the past to access children whom he eventually offended against; that twice during Smith's time at DMH, he had video games confiscated that featured a child or childlike avatars; that Smith has stated that he would continue to play video games if granted conditional release; that while being escorted by DMH staff during a medical visit outside of DMH confinement, Smith encountered children in a doctor's waiting room and reported being "very anxious;" that Smith has the tendency to offend when lonely or bored; that in 1992 despite a low score on actuarial instruments used to assess the risk of re-offense, Smith reoffended when released from the Missouri Department of Corrections ("DOC"); that utilizing the re-offense rates of sex offenders generally, Smith scored on actuarial instruments equivalent to similarly situated offenders who are likely to reoffend at the rate of 5.6 percent over a 5-year period; that in performing the actuarial assessment of Smith's likelihood of reoffending, the assessing doctor utilized the re-offense rates of sex offenders generally, rather than those diagnosed with pedophilic disorder; and that a study showed that those committed to the DMH as SVPs are twice as likely to reoffend as sex offenders released without civil commitment.

Given this contested evidence, and our deferential standard of review, the trial court did not err when it concluded that Smith failed to sustain his burden to establish by a preponderance of the evidence that he no longer suffers from a mental abnormality that

makes him likely to engage in acts of sexual violence if conditionally released. *Ivie*, 439 S.W.3d at 206 ("When the evidence poses two reasonable but different conclusions, appellate courts must defer to the [trial] court's assessment of that evidence.").

Point denied.

## Conclusion

The trial court's Judgment is affirmed.

Cynthia L. Martin, Judge

All concur